238 September 15, 2016 No. 56

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROBERT CLATE MAKIN,
*Petitioner on Review.*

(CC C100549CR; CA A153309; SC S063440)

On review from the Court of Appeals.*

Argued and submitted March 7, 2016.

Rankin Johnson IV, Portland, argued the cause and filed the briefs for petitioner on review.

Jeff J. Payne, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and Armstrong, Justice pro tempore.**

KISTLER, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

_____

\* On appeal from the Washington County Circuit Court, Rick Knapp, Judge. 271 Or App 374, 348 P3d 1197 (2015).

\*\* Nakamoto, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

The question in this case is whether a reasonable trier of fact could find defendant guilty of first-degree child neglect for knowingly allowing his children to stay "[i]n a vehicle where controlled substances are being criminally delivered * * *." *See* ORS 163.547(1)(a)(A) (defining that offense). The evidence at trial showed that defendant's three children were in his car when a police officer stopped him for a traffic violation. Also in the car were methamphetamine and implements for selling it. There was no evidence, however, that defendant had sold or was delivering methamphetamine to an identified buyer while his children were with him in the car. Rather, all that the evidence showed was that, while his children were in the car, defendant possessed methamphetamine with the intent to sell it at some undefined point in the future.

The trial court found defendant guilty of first-degree child neglect, as well as other offenses. On appeal, the Court of Appeals affirmed defendant's first-degree child neglect convictions without discussion. *See State v. Makin*, 271 Or App 374, 348 P3d 1197 (2015) (per curiam) (addressing other convictions). Having allowed defendant's petition for review, we now reverse his convictions for first-degree child neglect. We accordingly affirm in part and reverse in part the Court of Appeals decision and the trial court's judgment.[1]

Because this case arises on defendant's motion for judgment of acquittal, we state the facts in the light most favorable to the state. For several weeks, defendant had been selling methamphetamine out of his car. He did so because he did not want his fiancée to discover what he

---

[1] The trial court found defendant guilty of one count of delivering methamphetamine, one count of manufacturing methamphetamine, one count of possessing methamphetamine, and three counts of first-degree child neglect. The Court of Appeals affirmed defendant's convictions for possession, delivery, and child neglect but reversed and remanded his conviction for manufacturing to allow defendant to contest venue. *Makin*, 271 Or App at 375. Neither party challenges the latter ruling on review. As a result of our opinion and the Court of Appeals decision, defendant's convictions for delivery and possession are affirmed, his convictions for child neglect are reversed, and his conviction for manufacturing is reversed and remanded.

was doing. One day, a police officer stopped defendant for a traffic violation. Defendant's three children were in the car with him.[2] In response to routine questioning, defendant admitted that his driver's license had been suspended for driving under the influence of intoxicants. He also admitted that he had drugs on him. A search revealed that defendant had approximately 27.5 grams of methamphetamine on his person. In his car, he had scales, baggies, and drug records, as well as syringes and cotton balls for his customers' use. Defendant told the officers that a week earlier he had purchased approximately three-quarters of an ounce of methamphetamine for resale.

At the close of the evidence, defendant moved for a judgment of acquittal on the first-degree child neglect charges. Defendant did not dispute that the trial court reasonably could find that he possessed methamphetamine with the intent to sell it and that his three children were with him in the car while he possessed the methamphetamine. He argued, however, that there was no evidence that he had actually delivered or was in the process of delivering any methamphetamine while his children were in the car. Defendant's motion accordingly reduced to a question of statutory interpretation: Does the phrase "a vehicle where controlled substances are being criminally delivered" include a vehicle in which a person possesses methamphetamine with the intent to deliver it at some undefined point in the future? The trial court ruled that it did, and the Court of Appeals upheld that ruling without discussion. We allowed defendant's petition for review to consider that question.

In analyzing that question, we employ our familiar methodology. We look to the text, context, and legislative history of ORS 163.547(1)(a)(A) to determine the legislature's intent. *See State v. Gaines*, 346 Or 160, 170-71, 206 P3d 1042 (2009). As we understand the parties' arguments, defendant's argument rests primarily on what he views as the plain text of ORS 163.547(1)(a)(A) while the state relies primarily on what it views as the statute's context. As we explain below, the dispositive answer to the parties' dispute lies in the statute's legislative history.

---

[2] All three children were under 16 years of age.

## I.   TEXT

ORS 163.547(1)(a) provides in part:

"A person having custody or control of a child under 16 years of age commits the crime of child neglect in the first degree if the person knowingly leaves the child, or allows the child to stay:

"(A)   In a vehicle where controlled substances are being criminally delivered or manufactured[.]"

Defendant argues that the ordinary meaning of the verb "deliver" supports his position that he was not delivering controlled substances while his children were in the car. As defendant notes, in this context, "deliver" ordinarily means "GIVE, TRANSFER : yield possession or control of : make or hand over[.]" *Webster's Third New Int'l Dictionary* 597 (unabridged ed 2002). As used in ORS 163.547(1)(a)(A), the ordinary meaning of deliver implies a transfer of controlled substances, which did not occur in this case while defendant's children were in the car.

Defendant also notes that the legislature used the present progressive form of the verb "deliver." *See The Oxford Companion to the English Language* 809 (McArthur ed 1992) (discussing present progressive verb form).[3] Generally, the progressive aspect of a verb "indicates a happening in progress at a given time." Quirk *et al.*, *A Comprehensive Grammar of the English Language* 197 (1985). When used with an event, "the progressive conveys the idea that an event has duration, and has not yet come to an end." *Id.* at 199. Defendant infers from the use of the present progressive form of deliver that the legislature intended to prohibit controlled substances from being delivered while children were in a vehicle. Defendant notes that he was not in the process of delivering methamphetamine while his children were in his car. In his view, the only inference that the evidence permits is that he possessed methamphetamine

---

[3] The legislature also used the passive voice. In this context, the use of the passive voice implies that the legislature was not concerned with who was delivering controlled substances but whether children were present when controlled substances were being delivered.

with the intent to deliver it at some unspecified point in the future.[4]

## II.  CONTEXT

The state does not dispute that the text of the statute, viewed in isolation, supports defendant's position. Its argument focuses instead on the statute's context. Specifically, the state reasons that ORS 163.547(1)(a)(A) refers to and incorporates the definition of "deliver" in the Controlled Substances Act, ORS 475.005 to 475.285 and 475.752 to 475.980. The Controlled Substances Act defines "deliver" as the "actual, constructive or attempted transfer *** from one person to another of a controlled substance." ORS 475.005(8). It follows, the state contends, that it need not prove an actual delivery. An attempted delivery will suffice.

The state also contends that the context for the child-neglect statute includes the Court of Appeals decision in *State v. Boyd*, 92 Or App 51, 756 P2d 1276, *rev den*, 307 Or 77 (1988). In that case, the Court of Appeals held that, under the Controlled Substances Act, "the possession of a large amount of [a controlled substance], not for personal use but for sale" was evidence from which the trier of fact reasonably could find an attempted delivery and thus a "delivery" for the purposes of the Controlled Substances Act. *See Boyd*, 92 Or App at 53-54.[5] It follows, the state reasons, that defen-

---

[4] This case does not require us to decide whether first-degree child neglect only prohibits allowing underage children to stay in a vehicle where an actual transfer of controlled substances is occurring or whether the prohibition extends to allowing children to stay vehicles in which controlled substances are in the process of being delivered—*i.e.*, are being driven—to an identified buyer. In this case, there is no evidence that such a delivery was in progress. *See* Quirk, *A Comprehensive Grammar of the English Language* 199 (when used with an event, "the progressive conveys the idea that an event has duration, and has not yet come to an end"). Rather, defendant merely possessed methamphetamine with the intent to deliver it at some undefined point in the future.

[5] *Boyd* explained that attempted delivery requires intentionally engaging in conduct that constitutes a substantial step toward the delivery of controlled substances. *See* 92 Or App at 53-54. The dispute in *Boyd* was not whether a reasonable trier of fact could infer an intent to deliver in *Boyd*: the defendant in *Boyd* admitted that she possessed bindles of heroin with the intent to sell them. *Id.* at 53. Rather, the dispute was whether a reasonable trier of fact could find that the possession of a substantial amount of heroin "not for personal use but for sale" constituted a substantial step. *Id.* at 54. Relying on legislative commentary, the Court of Appeals held that a reasonable trier of fact could draw that inference. *Id.*

dant's possession of a large amount of methamphetamine for sale constituted an ongoing attempted delivery, which permitted the trial court to find that controlled substances "were being delivered" while his children were in the car.

Defendant, for his part, does not question *Boyd*'s interpretation of "delivery" for the purposes of the Controlled Substances Act. Rather, he argues that the Controlled Substances Act and *Boyd* do not constitute context for the purposes of the child-neglect statute. The parties' disagreement over the sources of law that serve as context for a statute presents an interesting question in the abstract. We need not resolve that question, however, to decide this case. In this case, the legislative history of the child-neglect statute reveals that, in enacting that statute, the legislature specifically discussed both the Controlled Substances Act and *Boyd* in determining the effect, if any, that those two sources of law would have on the meaning of the child-neglect statute. That legislative history shows that the legislature was aware of those issues and, in our view, provides a surer guide to determining the legislature's intent than an abstract discussion of which context matters. We accordingly turn to the legislative history.

### III.  LEGISLATIVE HISTORY

In describing the legislative history, we discuss the ways in which the bill that became the child-neglect statute changed as it progressed through the two chambers of the legislature and the differing issues on which the House and the Senate judiciary committees focused when each chamber considered the bill. Essentially, we draw the following conclusions from that history. First, the comments of one of the bill's sponsors and the members of the House Judiciary Committee make clear that the word "delivered" in what became ORS 163.547(1)(a)(A) did not include "possession with intent to deliver."[6] More to the point, the text of the bill that emerged from the House made that point expressly. Second, the discussion of the changes that the Senate Judiciary Committee made to the bill point in more

---

[6] As noted, under *Boyd*, possession with intent to deliver is sufficient evidence from which a trier of fact can find an attempted delivery and, under the Controlled Substances Act, a delivery.

than one direction. The discussion that is most helpful to the state occurred between the counsel for the committee and a witness. However, given the other discussions that occurred among the members of the committee and the legislative history from the House, we do not find a sufficiently clear intent in the Senate to depart from the House's understanding of the bill. Finally, the House's decision to concur in the Senate amendments does not provide a basis for reaching a different conclusion.

A. *House Judiciary Committee*

In 1990, Representatives Courtney and Mannix introduced House Bill (HB) 2545, which created a new crime of child neglect. Bill File, HB 2545, Nov 29, 1990. Section 1 of the bill created the crime of first-degree child neglect. As initially introduced, section 1 made it a crime for a person having custody or control of a child under 16 years of age to "knowingly leav[e] the child, or allo[w] the child to stay in a structure or vehicle and in the immediate proximity where controlled substances are criminally delivered or manufactured." *Id.* § 1. Section 3 of the bill created the crime of second-degree child neglect. It differed from section 1 in that it applied to consumption and possession rather than delivery and manufacture. *See id.* § 3. Specifically, section 3 made it a crime to knowingly leave or allow a child under 16 years of age to stay "in a structure or vehicle and in the immediate proximity where controlled substances are criminally possessed or consumed." *Id.*

On February 19, 1991, the House Subcommittee on Crime and Corrections held a public hearing and work session on the bill. Much of the discussion focused on whether section 1 of the bill was broader than necessary to serve its purpose.[7] The proponents of the bill explained that the purpose of section 1 was to impose greater penalties on people who expose their children to the dangers associated with distributing and manufacturing controlled substances. In describing those dangers, the proponents emphasized the risk of exposing children to the chemicals

---

[7] No one discussed section 3 of the bill, which created the crime of second-degree child neglect.

used in manufacturing methamphetamine and to the dangers of violence arising from the distribution of controlled substances.

Members of the subcommittee pressed the bill's proponents on essentially three points. First, they asked whether the dangers of growing—*i.e.*, manufacturing—marijuana were the same as the dangers of manufacturing methamphetamine. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2545, Feb 19, 1991, Tape 27, Side A (remarks of Representative Mason). Second, they questioned whether the effect of the bill would be to separate children from parents whose criminal acts were essentially a consequence of their addiction. *Id.* (remarks of Representatives Mason and Bauman). Finally, they considered whether section 1 of the bill would apply only to actual deliveries of controlled substances or would also apply to attempted deliveries, as defined in *Boyd*. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2545, Feb 19, 1991, Tape 28, Side A (remarks of Representatives Mason and Mannix).

The last point arose when the chair of the subcommittee asked what the phrase "criminally delivered," as used in section 1 of the bill, meant. *Id.* (remarks of Representative Miller). Jim McIntyre, on behalf of the Oregon Sheriff's Association, explained that the bill would apply to the delivery and manufacture of controlled substances, as set out in ORS 495.005. *Id.* The chair also asked how section 1 of the bill differed from a section of the existing child-endangerment statute, which made it a misdemeanor to "[p]ermi[t] a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." *See id.* (remarks of Representative Miller) (referring to ORS 163.575(1)(b)).

After a brief colloquy, Representative Mannix explained that section 1 of the child-neglect bill applied to younger children (children under 16 years of age) and carried a greater penalty than the child-endangerment statute. *Id.* He also noted that the child-endangerment statute prohibits permitting a child to enter or remain in a place where controlled substances are possessed. *Id.* He explained

that, by contrast, first-degree child neglect would apply only to allowing children to remain where controlled substances are manufactured or delivered. *Id.* He reasoned that man-ufacturing and delivery pose greater risks to children than possession. *Id.*

In response, one of the witnesses testifying in sup-port of the bill stated that the phrase "criminally delivered" was intended to incorporate the definition of "delivery" from the Controlled Substances Act. *Id.* (testimony of Jim McIntyre). In his view, the phrase included, as the statutory definition in the Controlled Substances Act does, attempted deliveries as defined in *Boyd*; that is, "criminally delivered" in the child-neglect act included possession with intent to deliver. *Id.* At that point, Representative Mason expressed his concern that *Boyd* had interpreted attempted delivery in the Controlled Substances Act too broadly. *Id.* Representative Mannix explained that "*Boyd* involves attempt to deliver and trying to determine whether or not there's an intent to deliver by looking at the quantity [of drugs possessed]." *Id.* He then added, "We are not talking attempted delivery here [in the child-neglect bill], we're talking about actual deliv-ery." *Id.* Representative Mannix also explained, in response to the witness's reliance on the definition of delivery in the Controlled Substances Act and the interpretation of that term in *Boyd*, that the legislature had the power to define "delivery" for the purposes of the child-neglect statute differ-ently from the Court of Appeals' interpretation of that term in the Controlled Substances Act. *Id.*[8]

After considering the testimony at the public hear-ing, the subcommittee went into a work session, in which it agreed to reduce the crime seriousness level of first-degree child neglect to mitigate the prospect that children would be separated from their parents as a result of the parents' addiction, and it agreed to delete the phrase "in the imme-diate proximity." *Id.* A member of the subcommittee moved to send the bill, as amended, to the full committee with a

---

[8] As Representative Mannix put it, "*Boyd* is as ethereal as the next panel sitting in the Court of Appeals, whereas this is hard law." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2545, Feb 19, 1991, Tape 28, Side A.

"do pass" recommendation. That motion failed. The subcommittee then voted to reconsider the bill, and various subcommittee members suggested ways in which future work sessions could narrow the bill, none of which touched on the issue that this case presents. *Id.*

On March 12, the subcommittee held a second work session on HB 2545, at which it considered amendments proposed by Representative Mason.[9] Of relevance here, those amendments changed the definition of second-degree child neglect. As initially proposed, the bill had defined second-degree child neglect as knowingly leaving or allowing a child under 16 years of age to stay "in a structure or vehicle *** where controlled substances are criminally possessed or consumed." Bill File, HB 2545, Nov 29, 1990. Representative Mason proposed amending the definition of second-degree child neglect to apply to knowingly leaving or allowing a child under 16 years of age to stay "in a vehicle or on premises where controlled substances are consumed in the presence of the child or *are criminally possessed with the intent to distribute in the presence of the child*." Bill File, HB 2545, Mar 19, 1990 (proposed amendments) (emphasis added).

In discussing the proposed amendments, Representative Mason stated the changes that the amendments would make to the wording of the bill. However, he did not explain why he was proposing those changes or discuss how those changes would work. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2545, Mar 12, 1991, Tape 51, Side A (discussing proposed amendments). The subcommittee then voted to accept the amendments, approved the bill, as amended, and sent it to the full committee with a "do pass" recommendation. *Id.* The House subsequently voted in favor of the bill, as amended.

Section 1 of the bill, as approved by the House, defined the crime of first-degree child neglect as knowingly leaving or allowing a child under 16 years of age to stay

---

[9] Representative Mannix was a sponsor of the bill, but he was not a member of the subcommittee. Accordingly, he neither voted on the bill in the subcommittee nor moved to amend it.

"in a vehicle or on premises where controlled substances are criminally delivered or manufactured for consideration or profit." Bill File, HB 2545, Mar 28, 1991 (A-Engrossed Bill). Section 3 of the bill defined the crime of second-degree child neglect as knowingly leaving or allowing a child under 16 years of age to stay "in a vehicle or on premises where controlled substances are consumed in the presence of the child or are criminally possessed with the intent to distribute in the presence of the child." *Id.*

Although the subcommittee did not explain why it approved the March 12 amendments that Representative Mason had proposed, the textual change that the subcommittee made and that the House later approved makes one proposition clear: "Delivered," as that term was used in section 1 of the bill, did not include "possessed with intent to distribute." Rather, if a defendant knowingly left a child under 16 years of age in a vehicle where controlled substances were possessed with an intent to distribute them, then that defendant would not be guilty of first-degree child neglect. Rather, the defendant would be guilty of second-degree child neglect.

While Representative Mason did not make that point explicitly in proposing the March 12 amendments to the bill, the change that he proposed is consistent with both his and Representative Mannix's earlier comments during the February 19 public hearing on the bill. Representative Mason had expressed his disagreement with the extent to which *Boyd* had expanded the concept of attempted delivery in the Controlled Substances Act, and Representative Mannix had explained that "delivery" for the purposes of the child-neglect bill referred only to actual deliveries. By excepting "possessed with intent to distribute" out of the term "delivered," as used in section 1 of the child-neglect bill, the March 12 amendments effectively removed attempted deliveries, as defined in *Boyd*, from the scope of "delivered" as used in section 1 of HB 2545.

B.   *Senate Judiciary Committee*

When HB 2545 went to the Senate Judiciary Committee, that committee did not express any concern about section 1 of the bill. *See* Tape Recording, Senate

Committee on Judiciary, HB 2545, May 29, 1991, Tape 197, Side A and Tape 198, Side A. Rather, it focused on the first part of section 3 of the bill, which provided that a person commits the crime of second-degree child neglect if the person knowingly leaves or allows a child under 16 years of age to stay "on premises where controlled substances are consumed in the presence of the child." *See id.* at Tape 198, Side A. Senator Brockman asked whether the bill, if enacted, would require a parent who brought his or her child to a public event to leave if someone at the event began smoking marijuana. *Id.* As part of that discussion, Senator Cohen asked whether section 3 of the bill was essential. *Id.* In asking that question, Senator Cohen focused on excising the part of section 3 that prohibited knowingly allowing a child to stay on premises where controlled substances are consumed. *Id.* A witness who supported the bill responded that, while "life would continue" if that part of section 3 were removed, "possessing with intent to distribute in the presence of a child * * * is an entirely different area." *Id.* (testimony of John Bradley).

At that point, the counsel for the committee asked the witness "if you could prove possession with intent to deliver don't you basically have a delivery?" *Id.* (remarks of Ingrid Swenson). The witness replied that "currently in Oregon law you do." (testimony of John Bradley). The witness noted, however, that "Representative Mason has from time to time talked about doing away with it." *Id.* The counsel responded, "So, that behavior is actually covered in subsection (1) is what I'm saying." *Id.* (remarks of Ingrid Swenson). The witness replied that it was, and the issue received no further discussion.

Approximately two weeks later, the Senate Judiciary Committee held a work session on the bill. At that session, the committee considered amendments that limited the reach of the bill. Of relevance here, the committee considered an amendment that deleted section 3 of the bill in its entirety. Bill File, HB 2545, June 18, 1991 (proposed amendments to A-Engrossed HB 2545). Under that amendment, HB 2545 would no longer prohibit what had been second-degree child neglect—knowingly leaving or allowing a child under 16 years of age to stay in a vehicle or on premises

"where controlled substances are consumed in the presence of the child or are criminally possessed with the intent to distribute in the presence of the child."[10] In explaining that proposed amendment, the counsel for the committee stated:

> "[S]ection (3) would have basically required a person who was in the presence of even the criminal possession of a controlled substance to leave or remove the child. Under those circumstances, it would have been a C felony. That provision has been deleted."

Tape Recording, Senate Committee on Judiciary, HB 2545, June 11, 1991, Tape 226, Side A (remarks of Ingrid Swenson). No further discussion of the proposed amendment occurred, and the committee voted at the end of the work session to approve it.

The committee made a separate but related change to section 1 of the bill. During the work session, Senator Shoemaker observed that, as he understood the purpose of section 1 of the bill, it was to prohibit "criminal delivery or manufacture [that] occur[red] while the child is on the premises and in the proximity" of that activity. *Id.* (remarks of Senator Shoemaker). He noted that, as currently written, section 1 prohibited leaving or allowing a child to be in a vehicle or on premises where controlled substances "are criminally delivered or manufactured." *Id.* He reasoned that, by using the verb "are delivered or manufactured," "[y]ou could have a place where that does happen but isn't happening then. It's still a place where substances are delivered or manufactured. I don't think that was intended." *Id.* He added that using "'are being,' I think, would do it." *Id.* That is, he suggested that using the present progressive form of the verb would better capture the legislature's intent. *Id.*

In response to Senator Shoemaker's observation, two witnesses explained that, for premises, the risks to children were substantial even if controlled substances were not in the process of being delivered or manufactured. They noted that the presence of precursor chemicals used to manufacture methamphetamine posed grave risks to children

---

[10] The amendments also narrowed section 1 of the bill, which defined first-degree child neglect. They provided that "'vehicle' and 'premises' do not include public places."

even if methamphetamine was not currently being manufactured. *See id.* (testimony of Russ Spencer). They also noted the possibility of "booby traps and shoot outs" on premises on which controlled substances are sold, even though controlled substances were not in the process of being sold. *Id.* Those witnesses explained that the knowledge within a community that drugs are present in a house "makes the house a target," with the prospect of "violent drug rip-offs [and] drive-by shootings." *Id.*

Senator Shoemaker recognized that those concerns applied to premises where controlled substances "are manufactured or delivered." *Id.* He questioned, however, whether those concerns also applied to automobiles. He asked:

> "Assume an automobile is used for delivery without the child. The child is not there. The next day, the mother drives the car with the child in it. Is that neglect?"

*Id.* The witness explained that that was not his intent, and counsel for the committee suggested distinguishing vehicles from premises. Adopting Senator Shoemaker's proposal to use the progressive form of the verb, the committee counsel suggested referring to "a vehicle where controlled substances are being criminally delivered or manufactured." *Id.* (remarks of Ingrid Swenson). The Chair concurred and suggested that the bill be amended "to accommodate the differences between a vehicle and a premise." *Id.* (remarks of Senator Cohen). The committee agreed conceptually to that amendment. The committee also agreed to send the bill, as amended, to the Senate with a "do pass" recommendation, which voted for it. The House concurred in the Senate amendments, and the Governor signed the bill.[11]

---

[11] Because the version of HB 2545 that came out of the Senate differed from the version of the bill that came out of the House, the bill, as amended by the Senate, went back to the House. Initially, the House voted not to concur in the bill and appointed representatives to be part of a conference committee. Four days later, the House voted to reconsider its earlier decision and then voted to concur in the Senate version of the bill. Senate and House Journal, Regular Session, 1991, H-102. Although there are tape recordings of the discussion on the House floor, the tapes are almost completely inaudible. It appears from the tapes and the House logs that Representative Mannix spoke in favor of reconsidering the bill and concurring in the Senate version of the bill. However, what any speaker said cannot be determined. Perhaps because of that difficulty, neither party has relied on any statement made on the House floor after the amended bill came back from the Senate.

With that history in mind, we turn to the parties' arguments. The state notes that the witness who testified before the House subcommittee in support of HB 2545 took the position that "delivered," as that term was used in section 1 of the bill, included attempted deliveries as defined in *Boyd*; that is, the witness reasoned that possession of controlled substances with the intent to deliver them constituted an attempted delivery and thus a "delivery" for the purposes of section 1 of HB 2545. The difficulty with the state's reliance on that witness's testimony is that the House subcommittee did not accept it. As noted, Representative Mason, who was a member of the subcommittee, expressed his view that *Boyd*'s interpretation of "delivery" in the Controlled Substances Act was too broad. Moreover, Representative Mannix, who was one of the bill's sponsors, explained that "delivery," as that term was used in section 1 of the child-neglect statute, referred to actual delivery, not attempted delivery.

Of greater significance, after that hearing, the House subcommittee amended the bill to make "possession with intent to distribute" a ground for second-degree child neglect. While knowingly leaving a child in a vehicle where controlled substances "are criminally delivered" would constitute first-degree child neglect, knowingly leaving a child in a vehicle where controlled substances "are criminally possessed with the intent to distribute" would constitute second-degree child neglect. That textual change necessarily implies that, as the bill came out of the House, "delivered" did not include "possessed with the intent to distribute." Put differently, first-degree child neglect, as the bill emerged from the House, excluded "*Boyd* deliveries" from the concept of delivery.

The legislative history in the Senate does not provide a basis for departing from that understanding. As noted, the Senate voted to delete section 3 of the bill, which had defined second-degree child neglect as knowingly leaving or allowing a child to stay in a vehicle or on premises where controlled substances were consumed in the presence of the child or possessed with intent to distribute in the presence of the child. Two different inferences can be drawn from that decision. First, the Senate could have intended that the child-neglect

statute would not apply to either of the acts identified in section 3 and instead could have chosen to leave those acts subject only to the existing child-endangerment law. Second, the Senate could have intended to eliminate the first part of section 3 (prohibiting leaving a child in a place or vehicle where controlled substances are consumed), but it could have intended that the second part of section 3 (addressing possession of controlled substances with the intent to distribute) would be subsumed in the term "delivered" in section 1 of the bill, which defined first-degree child neglect.

As discussed above, the colloquy between the committee counsel and one of the witnesses on May 29 supports the latter inference. However, no member of the committee ever endorsed (or even commented on) the interpretation that the committee counsel suggested. Moreover, when the committee actually considered an amendment to delete section 3 in its entirety, the only explanation for doing so focused on something else. Counsel explained that section 3 "would have basically required a person who was in the presence of even the criminal possession of a controlled substance to leave or remove the child." Tape Recording, Senate Committee on Judiciary, HB 2545, June 11, 1991, Tape 226, Side A. Specifically, after hearing an explanation that section 3 would apply to possession, the committee voted to delete that section. Ordinarily, the effect of deleting section 3 of the bill in its entirety would be that the bill would not prohibit either of the acts (consumption or possession with intent to distribute) that section 3 previously had covered.

The Senate Judiciary Committee made one last change that bears on this issue. As noted, Senator Shoemaker proposed changing the verb form from "are delivered" to "are being delivered." After considering the witnesses' concerns regarding the risks to children present on premises where controlled substances are manufactured or delivered, the committee distinguished between vehicles and premises. It made it a crime to knowingly leave or allow a child under 16 years of age to stay in a vehicle where controlled substances "are being criminally delivered or manufactured" while making it crime to leave the child on premises where controlled substances "are criminally delivered or manufactured." Bill File, HB 2545, June 20, 1991 (B-Engrossed Bill).

For the most part, the use of the progressive form of the verb answers the question of *when* the child must be present in a vehicle—when a delivery is occurring. It does not address *what* acts constitute a delivery within the meaning of the child-neglect statute. However, in discussing the problem regarding vehicles that the bill sought to address, one of the witnesses explained that there had been a well-documented case where the defendant made three controlled buys in his car while two of his children were in the car. Tape Recording, Senate Committee on Judiciary, HB 2545, June 11, 1991, Tape 226, Side A (testimony of Russ Spencer). He observed, "As to whether it would constitute neglect under the bill if the next day they were driving down the road, I don't know but that's not our intent." *Id*. The witness did not express a concern that vehicles where deliveries customarily are made would become targets for people attempting to steal drugs in the same way that drug houses would. Rather, the focus was on the dangers that ongoing deliveries posed to children inside the cars. While not dispositive, the committee's decision to require that a delivery of controlled substances in a vehicle be contemporaneous with the children's presence is consistent with the notion that the committee was concerned with something more than possessing drugs in a vehicle with an intent to deliver those drugs at some undefined point in the future.

On balance, we are not persuaded that the Senate's decision to delete section 3 of the bill defining second-degree child neglect reflects an intent to depart from the House's understanding of the bill. Three considerations lead us to that conclusion. First, the legislative history in the House clearly demonstrates an intent to distinguish "delivered" from "possessed with intent to distribute." Second, ordinarily, the effect of deleting section 3 of the bill (prohibiting second-degree child neglect) would be to eliminate the prohibition against all the conduct that that section covered, leaving any criminal prosecution of that conduct to the child-endangerment statute. Third, the stated reason for deleting second-degree child neglect in its entirety was to eliminate the part of that section that referred to possession, not just the part of section 3 that referred to consumption. Arrayed against those considerations is an earlier colloquy between

the Senate committee counsel and a witness, which no member of the Senate ever endorsed. In our view, that colloquy is far too thin a reed on which to rest the conclusion that the state asks us to draw from the legislative history.

We accordingly hold that first-degree child neglect, as defined in ORS 163.547, does not include knowingly leaving or allowing a child under 16 years of age to stay in a vehicle where controlled substances are possessed with an intent to deliver them.[12] Because the state does not argue that the evidence in this case gives rise to any inference other than possession with intent to deliver, we reverse the Court of Appeals decision to the extent it upheld defendant's convictions for first-degree child neglect. On review, defendant does not challenge his convictions for delivery and possession, and the state does not challenge the Court of Appeals decision reversing defendant's conviction for manufacturing and remanding that charge for further proceedings. Those parts of the Court of Appeals decision are affirmed.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded for further proceedings.

---

[12] The state did not charge defendant with child endangerment for allowing his children to "remain in a place where unlawful activity involving controlled substances is maintained or conducted[.]" *See* ORS 163.575(1)(b); *State v. Gonzalez-Valenzuela*, 358 Or 451, 473-74, 365 P3d 116 (2015) (discussing factors that would give rise to such a charge). We accordingly have no occasion to consider whether the facts in this case would be sufficient for a reasonable trier of fact to find defendant guilty of that offense.