Argued and submitted January 13; decision of Court of Appeals reversed, case remanded to Court of Appeals for further proceedings July 9, 2020

KINZUA RESOURCES, LLC,
an Oregon limited liability company;
Frontier Resources, LLC,
an Oregon limited liability company;
ATR Services, Inc., an Oregon corporation;
and Gregory M. Demers, an individual,
*Respondents on Review,*

*v.*

OREGON DEPARTMENT
OF ENVIRONMENTAL QUALITY,
an agency of the State of Oregon;
and Oregon Environmental Quality Commission,
an agency of the State of Oregon,
*Petitioners on Review.*

(LQSWER11108) (CA A161527) (SC S066676)

468 P3d 410

If a landfill has become inactive and the permit holder has failed to properly close it, then other persons "owning or controlling" the landfill site must fulfill obligations related to proper closure. ORS 459.205; ORS 459.268. The Environmental Quality Commission found that petitioners had the legal authority to control an inactive landfill site, and on that basis held that petitioners were persons "controlling" the site. Accordingly, the commission had imposed liability on petitioners for failing to perform the statutory closure requirements. The Court of Appeals reversed, holding that persons "controlling" a landfill site are limited to those persons actively involved in the operation or management of the site, and petitioners were not in that class. The Department of Environmental Quality sought review. *Held*: (1) The legislature intended the category of persons "controlling" a site to include persons having the authority to control the site, regardless of whether that authority has been exercised; (2) if a limited liability company (LLC) member meets the statutory test of being a person "controlling" the site, then it can be directly liable for its own omissions without conflict with the LLC statutory liability shield of ORS 63.165(1); and (3) the matter should be remanded for the Court of Appeals to consider an alternative argument that the record lacks substantial evidence to support the commission's findings.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

En Banc

On review from the Court of Appeals.*

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioners on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Julie A. Weis, Haglund Kelley LLP, Portland, argued the cause and filed the brief for respondents on review. Also on the brief was Michael E. Haglund, Portland.

FLYNN, J.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

_____

* On judicial review from a final order of the Environmental Quality Commission. 295 Or App 395, 434 P3d 461 (2018), *adh'd to on recons*, 296 Or App 487, 437 P3d 331 (2019).

**FLYNN, J.**

If a landfill has become inactive and the permit holder has failed to properly close it, then other persons "owning or controlling" the landfill site must fulfill obligations related to proper closure. ORS 459.205; ORS 459.268. The dispute in this case arises out of an order of the Environmental Quality Commission, which concluded that petitioners were persons "controlling" an inactive landfill site and imposed liability on them for failing to perform the statutory closure requirements. At issue here is whether the legislature intended that the category of persons "controlling" the landfill site would extend to those having the legal authority to control the site—as the commission concluded—or would be limited to "those persons actively involved in the operation or management of a landfill site"—as the Court of Appeals concluded in this case. *Kinzua Resources v. DEQ*, 295 Or App 395, 408-09, 434 P3d 461 (2018), *adh'd to on recons*, 296 Or App 487, 437 P3d 331 (2019). We allowed review of the decision of the Court of Appeals, and we now conclude that the legislature intended the category of persons "controlling" the site to include persons having the authority to control the site, regardless of whether that authority has been exercised. We remand to the Court of Appeals to consider petitioners' remaining challenges to the order in light of the correct legal standard.

## I.  FACTS

For purposes of our review of the legal issue, we take our statement of relevant facts from those found by the commission. Kinzua Resources LLC was both the permit-holder for Pilot Rock Landfill and the owner of the landfill site. Petitioners are the two members of Kinzua—Frontier Resources, LLC and ATR Services, Inc.[1]—as well as Gregory Demers, who is a member of Frontier and the president of ATR.[2]

---

[1] A "limited liability company," or LLC, is "an entity that is an unincorporated association that has one or more members and is organized under" the provisions of ORS chapter 63. ORS 63.001(17). Some LLCs are managed by the members and others are managed by one or more managers. ORS 63.130. The evidence is that Kinzua was managed by its members.

[2] Although Kinzua has also been identified as a "petitioner" throughout the appeal, petitioners have raised no challenge regarding the liability assessed

Kinzua obtained a permit from the Department of Environmental Quality (DEQ) in 2006 to operate the landfill as a disposal site for waste from an adjacent sawmill. Both the terms of the permit and OAR 340-095-0090 required Kinzua to maintain financial assurance (commonly insurance or a bond) in an amount sufficient to cover the anticipated costs of eventual closure and post-closure maintenance of the landfill. But Kinzua failed to secure the required financial assurance. As a result, DEQ issued a Notice of Civil Penalty Assessment and Order to Kinzua for the financial assurance violation in July 2010, while the landfill was still operating.

Later in 2010, the landfill accepted its last delivery of waste, but Kinzua failed to fulfill the requirements for closing a landfill that has stopped receiving waste. Also in 2010, Frontier and ATR determined that Demers should respond to inquiries from DEQ about the landfill, and Demers acted as the exclusive contact with DEQ regarding issues related to the financial assurance violation and issues related to surface fires that erupted on the landfill site in the summers of 2010 and 2011.

In July 2011, Kinzua was administratively dissolved by the Secretary of State and remained dissolved until September 2013, at which point the Secretary of State retroactively reinstated the LLC to active status. During the time period that Kinzua was in dissolved status, DEQ issued an Amended Notice of Civil Penalty Assessment and Order charging Kinzua, as well as the three petitioners, with violations of both the financial assurance requirement and the landfill closure requirements.

Following a contested case hearing, the Environmental Quality Commission issued an order concluding that Kinzua violated ORS 459.268 by failing to close the landfill, violated OAR 340-095-0090 by failing to secure sufficient financial assurance, and violated OAR 340-095-0050(1) by failing to apply for a "closure permit."[3] The commission

against Kinzua. We use the term "petitioners" to refer to ATR, Frontier, and Demers, each of whose liability is in dispute.

[3] The Environmental Quality Commission, which issued the order, consists of five appointed members and is charged with establishing policies for the

assessed a total penalty of $782,862; the vast majority of that amount came from DEQ's calculation of the economic benefit "gained by Kinzua in avoiding the cost of closing the landfill."

In addition, the commission concluded that Frontier, ATR, and Demers were responsible for the same violations as persons "controlling" the landfill, and it assessed a civil penalty against them "in the same amount and manner as Kinzua Resources LLC." The commission reasoned that "controlling" includes having authority to control and found that all three petitioners met that test. With respect to Demers, the commission found that he "had actual control of matters relating to the landfill site and that he exercised that control." With respect to ATR and Frontier, the commission found that they had the authority, as the members of Kinzua, "to control the property of the company, including the landfill."

Petitioners sought review of the commission's decision in the Court of Appeals, arguing that the statutory phrase "controlling the disposal site" should be construed as "akin to being an operator" and that none of the petitioners factually met that test. The Court of Appeals agreed with petitioners' statutory construction argument. That court held that "controlling" in ORS 459.205 and ORS 459.268 "means actually exercising 'restraining or directing influence' over a landfill site or the property on which it is located, and not merely having the authority to do so or communicating on behalf of an entity exercising such control." *Kinzua Resources*, 295 Or App at 397 (footnote omitted). The court then remanded to the commission to consider the evidence in light of that definition of "controlling." *Id.* at 409.

## II.   DISCUSSION

As set out above, the issue in this case requires us to determine whether the Court of Appeals and petitioners are correct that the legislature, in imposing duties on the person "controlling the disposal site," intended to reach only

operation of DEQ. ORS 468.010; ORS 468.015. DEQ is a department under the commission and is charged with investigating and commencing enforcement proceedings for violations of rules or standards adopted by the commission. ORS 468.030; ORS 468.090.

persons "actually exercising" control over the site.[4] The disputed phrase appears in two statutes that we construe in this case. The first statute, ORS 459.205, imposes various obligations on a "person owning or controlling" a disposal site to obtain permits. The second statute, ORS 459.268, requires "the person owning or controlling the property" to close and maintain the disposal site appropriately, if the permit holder has failed to comply with the closure requirements.[5]

## A.   *Standard of Review*

Our review of the commission's final order in this contested case is governed by the Administrative Procedures Act. ORS 183.480(2). If—as the Court of Appeals concluded here—an agency has "erroneously interpreted a provision of law," and a correct interpretation "compels a particular action," then we must set aside or modify the order or remand the case to the agency for further action. ORS 183.482(8)(a). Our standard of review requires us to first determine whether "controlling" is an exact term, an inexact term, or a delegative term, because the answer to that question determines whether the court gives weight to the commission's construction of the term. *See, e.g.*, *Penn v. Board of Parole*, 365 Or 607, 627, 451 P3d 589 (2019) (discussing framework for when court will and will not defer to agency interpretation of statute); *Coos Waterkeeper v. Port of Coos Bay*, 363 Or 354, 360-61, 423 P3d 60 (2018) (setting out framework). The parties agree, as do we, that "controlling" is an inexact term: It expresses a complete legislative meaning, albeit with less precision than is true of an exact term. *See Penn*, 365 Or at 627 ("'Inexact' terms embody a complete expression of the legislature's intentions, but those intentions are not evident, and it is for the courts to interpret them and the legislative policy they convey, and then to decide whether the agency

---

[4] Petitioners' legal challenge to the commission's order has been categorical. They have not advanced separate legal challenges to the different violations or to the commission's penalty calculation. Accordingly, we address only the question of what the legislature intended by "person *** controlling" the disposal site.

[5] The commission did not allege or find a violation of ORS 459.205, but the Court of Appeals understood the commission to have been acting under the authority of both statutes in imposing the fine. *Kinzua Resources*, 295 Or App at 397. The parties appear to share that understanding, so we assume for purposes of this case that the order implicates both statutes.

action conforms to that policy."). Accordingly, we construe the term without deference to the commission's interpretation, following the framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). *Coos Waterkeeper*, 363 Or at 360-61.

B.  *Statutory Construction*

When applying our framework for construing a statute, the "paramount goal" is to discern the intention of the legislature. *Gaines*, 346 Or at 171; ORS 174.020(1)(a). In pursuing that goal, we give primary weight to the text and context of the disputed statutory terms. *Gaines*, 346 Or at 171. As we emphasized in *Gaines*, "there is no more persuasive evidence of the intent of the legislature than 'the words by which the legislature undertook to give expression to its wishes.'" *Id*. (quoting *State ex rel Cox v. Wilson*, 277 Or 747, 750, 562 P2d 172 (1977)). But we also consider legislative history "for what it's worth." 346 Or at 171.

1.  *The meaning of "controlling" suggested from its common usage*

The words that give expression to the legislature's wishes, at issue here, are set out in ORS 459.205 and ORS 459.268. The first provides:

> "(1)   Except as provided by ORS 459.215, a disposal site shall not be established, operated, maintained or substantially altered, expanded or improved, and a change shall not be made in the method or type of disposal at a disposal site, until *the person owning or controlling the disposal site* obtains a permit therefor from the Department of Environmental Quality as provided in ORS 459.235.

> "(2)   The person who holds or last held the permit issued under subsection (1) of this section, or, if that person fails to comply, then *the person owning or controlling a land disposal site that is closed and no longer receiving solid waste* must continue or renew the permit required under subsection (1) of this section after the site is closed for the duration of the period in which the department continues to actively supervise the site, even though solid waste is no longer received at the site."

ORS 459.205 (emphases added).

The second provides:

> "When solid waste is no longer received at a land disposal site, the person who holds or last held the permit issued under ORS 459.205 or, if the person who holds or last held the permit fails to comply with this section, *the person owning or controlling the property on which the disposal site is located*, shall close and maintain the site according to the requirements of this chapter, any applicable rule adopted by the Environmental Quality Commission under ORS 459.045 and any requirement imposed by the Department of Environmental Quality as a condition to renewing or issuing a disposal site permit."

ORS 459.268 (emphasis added).

As the Court of Appeals observed, the disputed term "controlling" is not among the terms that the legislature has defined for purposes of ORS chapter 459. *Kinzua Resources*, 295 Or App at 403. When the legislature has not specially defined a term of common usage, we generally assume that the legislature intended to use the term in a manner consistent with its "plain, natural, and ordinary meaning," and we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean. *See, e.g.*, *Coos Waterkeeper*, 363 Or at 363. In this case, however, consulting a dictionary does not help us to resolve what the legislature intended the term "controlling" to mean.

The term "controlling" is the "present participle" construction of the verb "control," and the common usages of the verb "control" are sufficiently varied to provide support for each party's proposed constructions of the term. *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002). Those relevant usages are:

> "**(1) :** to exercise restraining or directing influence over **:** REGULATE, CURB (~ one's anger) (*controlling* her interest in the enterprise) **(2) :** to have power over **:** RULE (a single company ~s the industry)[.]"

*Id*. (emphasis in original). Those ordinary meanings do not assist us in deciding whether the legislature intended only the first usage—as the Court of Appeals concluded—or whether the legislature intended to reach the second usage as well.

According to petitioners, it is textually significant that the legislature used the term "controlling," rather than the term "control." They contend that the construction represents the "present continuous" conjugation of "control" and indicates "some current *action*" (emphasis in original). We are not persuaded by that argument.

Petitioners may be correct that the legislature's use of the present participle form of "control" suggests that the legislature intended to address the statutory requirements to persons *currently* "controlling" the site. *See State v. Makin*, 360 Or 238, 242, 381 P3d 799 (2016) ("Generally, the progressive aspect of a verb 'indicates a happening in progress at a given time.'" (Quoting Quirk *et al*, *A Comprehensive Grammar of the English Language* 197 (1985).)). But the usage does not tell us that the legislature intended to describe a current action rather than a current status.[6] *See State v. Gonzalez-Valenzuela*, 358 Or 451, 457, 365 P3d 116 (2015) (emphasizing contrast between "stative verbs, which 'refer to states of affairs,'" and "dynamic verbs, which 'refer to actions'" (quoting Tom McArthur ed., *Oxford Companion to the English Language* 985 (1992))). Specifically, the choice of "control*ing*" does not indicate whether the legislature intended to reach only persons presently "exercis[ing] restraining or directing influence over" the site or whether it also intended to reach persons presently "hav[ing] power over" the site.[7] *See Webster's Third New Int'l Dictionary* at 496. To resolve that dispute, we

---

[6] In general, the label "present progressive," or "present continuous," describes a verb construction that consists of the present participle ("-ing") form of the verb preceded by a "to be" verb and indicates "something ongoing, in progress." Rodney Huddleston & Geoffrey K. Pullum, *The Cambridge Grammar of the English Language* 116-17 (2002). Although the commission seemingly accepts petitioners' assumption that the legislature used "controlling" in that "present progressive," or "present continuous," form, we note that the statutory phrase uses the present participle construction of a verb without a "to be" auxiliary. That usage of the present participle may simply suggest that "controlling" modifies the noun, "person." *See id*. at 80 (describing present participle used in way that "is functionally comparable to an adjective in that it is head of an expression modifying a noun").

[7] Petitioners do not contend that the legislature's reference to "the person" should be understood as referring only to a single person for any one disposal site, and we do not understand the usage to convey that significance. *See* ORS 174.127(1) (instructing that, as used in the Oregon statutes, "[t]he singular number may include the plural and the plural number, the singular").

must consider the context in which the term "controlling" is used.

   2.   *The meaning suggested by relevant statutory context*

      The Court of Appeals did not find any context that was "particularly helpful in clarifying the meaning of 'controlling' as that term is used in ORS 459.205 and ORS 459.268." *Kinzua Resources*, 295 Or App at 405. We disagree. At least two aspects of the statutory context suggest that the legislature intended "controlling" to reach persons presently "hav[ing] power over" the site.

      First, it is significant that the legislature has addressed the same obligations to persons "owning" the site as it has to persons "controlling" the site. We have often explained that "the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision." *Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016); *see also Johnson v. Gibson*, 358 Or 624, 629-30, 369 P3d 1151 (2016) (explaining that the maxim *noscitur a sociis* "tells us that the meaning of an unclear word may be clarified by the meaning of other words used in the same context"). Here, giving the term "owning" its ordinary meaning, the statutory obligation arises from a person's status—possessing legal authority over the land on which the landfill is located—without regard for whether the person has actively participated in the operation of the landfill. *See Gonzalez-Valenzuela*, 358 Or at 457 n 5 ("To say that someone 'owns' a house is not to describe an action but to describe that person's status as a homeowner."); *Webster's Third New Int'l Dictionary* at 1612 (defining the verb "own" to mean "to have or hold as property or appurtenance : have a rightful title to, whether legal or natural"); *Black's Law Dictionary* 1280 (10th ed 2009) (defining the verb "own" to mean "[t]o rightfully have or possess as property; to have legal title to"). Thus, the pairing of persons "owning" the site with persons "controlling" the site is some indication that the legislature intended—in both cases—to reach persons who possess authority over the site regardless of whether they are actively participating in landfill operations.

Second, it is significant that the obligation of those "owning or controlling" the site arises only if the permit holder fails to act. According to the Court of Appeals, given that the person "controlling" the site is stepping into the shoes of a permit holder who fails to comply, "the legislature would reasonably have assigned that role to persons whose involvement with the land disposal site was most comparable to [that of] the permittee." *Kinzua Resources*, 295 Or App at 404. That is a reasonable premise, but we disagree with the court's conclusion that only those actively controlling the operations have involvement comparable to the permit holder. The category of persons who may obtain a permit to establish operations in the first place also consists of persons "owning or controlling" the site. ORS 459.205(1). Thus, the legislature viewed persons with sufficient authority over a site to obtain a permit before landfill operations have begun as equivalent to persons with sufficient authority to properly close the landfill after operations have ceased. In neither case has the legislature required that the person actively participate in landfill operations. That context suggests that the legislature intended "controlling" to reach persons currently "hav[ing] power over" the landfill and not just persons currently operating the landfill.

3.  *The meaning suggested by legislative history and purpose*

Although the legislative history sheds no direct light on what the legislature intended by "person *** controlling" the disposal site, it reveals a purpose that is consistent with an intention to require that those with controlling power over a landfill site step in when the permit holder fails to properly close the site. The legislature added the closure requirements to the solid waste statutes in 1983 when it adopted House Bill 2241, a bill filed at the request of DEQ. Or Laws 1983, ch 766, § 2 (adopting what is now ORS 459.268); *id*. § 7 (amending ORS 459.205 to add what is now subsection (2)). The bill was primarily discussed and debated in sessions before the House Committee on Environment and Energy, during which a representative of DEQ explained that post-closure maintenance of landfills is "critical" to prevent the release of "potentially explosive gases and polluting

drainage" from continuing decomposition and emphasized that the bill's purpose was to "assure continued protection of public health and safety and the environment" after landfill closure. Exhibit A, House Committee on Environment and Energy, HB 2241, Apr 25, 1983 (testimony of Stan Biles); Exhibit C, House Committee on Environment and Energy, HB 2241, May 20, 1983 (DEQ fact sheet accompanying testimony of Stan Biles). When the bill moved to the Senate, senators similarly were advised that the purpose of the bill was "to prevent environmental and health hazards from occurring during the closure and post-closure period" and that—according to DEQ—closure-related issues within the solid waste industry had left "major problems for the state to correct." Staff Measure Analysis, Senate Committee on Rules, HB 2241, July 7, 1983.

That purpose of assuring public protection when the permit-holder fails to act is more compatible with the commission's conclusion that "persons *** controlling" the disposal site reaches those having the authority to take the actions required for proper closure. If those closure obligations fell only to persons owning or "actively exercising" control over the landfill operations, it is more likely that critical post-closure maintenance would be left as a problem for the state to correct, as this case illustrates. At the point when DEQ raised concerns that Pilot Rock Landfill needed to be closed, the landfill had no employees. Moreover, Kinzua, which was both the permit holder for the landfill and the owner of the site, had been dissolved and could "not carry on any business except that which is appropriate to wind up and liquidate its business and affairs." ORS 63.637(1). In such circumstances, if petitioners were correct that only persons "actively involved in the operation or management of a landfill site" could be charged with satisfying the closure requirements, then the "critical" post-closure maintenance likely would remain unaddressed, potentially causing "major problems for the state to correct."

Our analysis of the text, context, and purpose of ORS 459.205 and ORS 459.268 thus persuades us that the legislature intended the term "controlling" to have its ordinary meaning, a meaning that includes both "exercising

power over" and "having power over." The Court of Appeals erred in concluding otherwise.

## C.   *Liability Issues Specific to LLC Members*

Petitioners' remaining argument for rejecting the commission's construction of "controlling" focuses on an unrelated statute that limits the liability of LLC members for debts of the LLC. The statute, ORS 63.165(1), is part of the Oregon Limited Liability Company Act, a statutory framework that authorizes and governs LLCs in Oregon. Or Laws 1993, ch 173, §§ 1, 35. It specifies that an LLC "member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager." ORS 63.165(1). According to petitioners, allowing the commission to impose liability on ATR and Frontier "would create statutory mischief by conflicting with ORS 63.165(1)." To the extent petitioners are arguing that the statutes themselves are in conflict, we disagree for the reasons that we explain below.[8] However, to the extent petitioners are challenging the factual bases for liability in this case, that is a question that should be resolved in the first instance by the Court of Appeals on remand.

We have often emphasized that, when multiple, apparently conflicting statutes are at issue, "this court, if possible, must construe those statutes in a manner that 'will give effect to all.'" *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) (quoting ORS 174.010). Here, we have previously construed the liability limitation in ORS 63.165 in a way that harmonizes with our conclusion about the scope of "controlling" for purposes of liability under ORS 459.205 and ORS 459.268.

---

[8]  We do not understand petitioners to argue that ORS 63.165(1) should inform our understanding of what the legislature intended "controlling" to mean—in all cases—when it added the disputed closure requirements to ORS 459.205 and ORS 459.268. Indeed, there is no reason to view ORS 63.165(1) as pertinent context for ORS 459.205 and ORS 459.268, given that the legislature adopted the disputed closure requirements ten years before it adopted the Oregon Limited Liability Company Act and ORS 63.165(1). Or Laws 1983, ch 766, §§ 2, 7; Or Laws 1993, ch 173. *See, e.g.*, *Gaines*, 346 Or at 177 n 16 (explaining that, "[o]rdinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute").

As the commission points out, we have construed ORS 63.165(1) to mean that members and managers of an LLC are not "vicariously liable for the LLC's debts, obligations, or liabilities," but that "a member or manager remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity." *Cortez v. Nacco Materials Handling Group*, 356 Or 254, 268-69, 337 P3d 111 (2014). The commission contends that ORS 63.165(1) permits it to impose liability based on petitioners' own failure to perform obligations with which they were individually charged in their capacity as persons "controlling" the landfill.

We agree with the commission that ORS 459.205 and ORS 459.268 impose obligations directly on each person "controlling" a landfill and that liability for the person's own failure to satisfy those obligations is direct liability, which ORS 63.165(1) does not prevent. Our decision in *Cortez* illustrates the distinction between vicarious liability and direct liability in the context of an LLC member. In that case, we considered a different statute that imposes workplace safety obligations, including on a person who "'retains the right to control the manner or method in which the risk-producing activity was performed.'" 356 Or at 273 (quoting *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 160, 61 P3d 918 (2003) (describing standard for liability under ORS 654.305)). We concluded that ORS 63.165(1) did not shield the member-manager of an LLC from liability for failing to satisfy the statutory safe-workplace obligations.

The plaintiff in *Cortez* was injured while working for a lumber mill and sued the member-manager of the LLC that operated the mill, alleging that the member-manager was a person subject to the obligations imposed by the statute and was liable for failing to perform those obligations. 356 Or at 256. The member-manager insisted that, under the liability shield of ORS 63.125(1), it could not be held personally liable for harm arising out of the LLC's business operations based on "merely having the authority to require the LLC to prevent a workplace accident." *Id.* at 263 (internal quotation marks omitted). But this court agreed with the plaintiff, who argued "that ORS 63.165(1) immunizes

[the LLC member] only from vicarious liability for the LLC's obligations," and not from liability for its own omissions if, "having retained control, [the person] failed to provide (or to require [the LLC] to provide) a safe workplace." *Id.* at 264.

We also concluded that the plaintiff was entitled to proceed to trial on the retained-control theory of liability because the evidence would permit a reasonable juror to infer that the LLC member-manager retained the necessary right to control to give rise to the obligation to provide a safe workplace. *Id.* at 274. In doing so, we specifically pointed to the legal authority that members and managers of an LLC hold, by statute, "to manage all aspects of [the LLC's] operation." *Id.*; *see* ORS 63.130.[9]

Our analysis in *Cortez* illustrates how ORS 459.205 and ORS 459.268 are harmonized with ORS 63.165(1). Under ORS 63.165(1), Frontier and ATR are shielded from vicarious liability for Kinzua's failure to satisfy the closure-related obligations that ORS 459.205 and ORS 459.268 impose on a permit holder. However, ORS 459.205 and ORS 459.268 separately impose obligations on "persons owning or controlling" the site when the permit holder fails to act, regardless of whether those persons have any relationship to the permit holder. Those obligations are premised on the person's own authority—retained or exercised—over the site at which the permit-holder has failed to act. And liability for failing to meet those obligations is direct liability for the person's own omissions. Thus, if Frontier and ATR meet the statutory test of persons "controlling" the site, then they can be directly liable for their own omissions with respect to the obligations that ORS 459.205 and ORS 459.268 impose, and ORS 63.165(1) does not shield them from that direct liability simply because their right to control the site is related to their right to manage the LLC that owns the site.

---

[9] Our decision in *Cortez* relied, in part, on the explanation of limited liability as set out in the commentary to the version of the Uniform Limited Liability Company Act (ULLCA), on which the legislature relied in adopting the current version of ORS 63.165(1). 356 Or at 267-68 (citing ULLCA § 303 comment (1996)). The commentary to the rule of limited liability in the current version of the ULLCA—although not pertinent legislative history—more explicitly articulates the distinction that we described in *Cortez*: "[T]he shield is irrelevant to claims seeking to hold a member or manager directly liable on account of the member's or manager's own conduct." ULLCA § 304 comment (2013).

Petitioners, nevertheless, assert that the liability imposed on Frontier and ATR in this case could not have been direct liability for their own omissions because, in petitioners' view, the record is "devoid of any evidence that ATR or Frontier, acting alone, had the authority to direct Kinzua's management or conduct." Petitioners support that assertion by emphasizing that Kinzua was a two-member LLC and pointing to ORS 63.130(1)(b), which specifies that "any matter related to the business of the limited liability company may be decided by a majority of the members." Some aspects of the order suggest that the commission treated the collective authority of the LLC members to control Kinzua as if each individual member had full authority to control Kinzua's property (the disposal site). The commission has insisted, however, that its finding that ATR and Frontier were persons controlling the landfill site relied on more than just their status as apparently co-equal members of Kinzua.

We decline to resolve that final dispute. Whether the liability that the commission imposed on petitioners is direct liability for petitioners' own omissions as persons "controlling" the disposal site is intertwined with an alternative argument that petitioners raised in the Court of Appeals—that the record lacks substantial evidence to support the commission's findings, even under the commission's construction of "controlling." The Court of Appeals did not reach that argument, and neither party has meaningfully addressed petitioner's evidentiary challenge in light of the statutory framework that we have articulated in this opinion. Under the circumstances, we conclude that it is appropriate to remand this case to the Court of Appeals to consider petitioners' remaining challenges to the order in light of the legal standard that we have identified.[10]

---

[10] Petitioners also advance a cursory challenge to the commission's finding that Demers was a person "controlling" the landfill site, which seemingly builds on the evidence that ATR and Frontier designated Demers to communicate with DEQ about the landfill. To the extent the argument is premised on a theory that agency law protects Demers from liability, it is an argument that the Court of Appeals declined to consider because petitioners raised it for the first time on reconsideration in that court, *Kinzua Resources*, 296 Or App at 488-89, and we also decline to reach that argument. To the extent petitioners' argument assumes that ATR and Frontier also were not persons "controlling" the landfill, the challenge as to Demers is within the scope of our remand to the Court of Appeals.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.