IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporation Excise/Income Tax

| | | |
|---|---|---|
| NBCUNIVERSAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170037R (Control) |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| NBCUNIVERSAL ENTERRPISE, INC., | ) | |
| | ) | TC-MD 170278R |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| Defendant. | ) | **JUDGMENT AND DENYING** |
| | ) | **PLAINTIFFS' MOTION FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT** |

This matter came before the court on Plaintiffs' Motion for Partial Summary Judgment (Plaintiffs' Motion), filed February 18, 2021, and Defendant's Cross-Motion for Partial Summary Judgment (Defendant's Cross-Motion) filed on April 16, 2021. Oral argument was held via Webex on September 20, 2021. Jeffrey M. Vesely, a California attorney admitted pro hac vice, appeared on behalf of Plaintiffs. Marilyn J. Harbur, Senior Assistant Attorney General, appeared on behalf of Defendant. Plaintiff NBCUniversal Enterprise, Inc (NBCU Enterprise) appeals for the 2006 to 2010 tax years; Plaintiff NBCUniversal, Inc. (NBCUniversal) appeals for the 2011 to 2013 tax years.

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TC-MD 170037R (Control)                                                                                                       1

## I.  STATEMENT OF FACTS

The parties stipulated to the following facts.  NBC Universal is one of the world's leading media and entertainment companies in the development, production, and marketing of entertainment, news, and information.  During the years at issue, NBC Universal owned and operated news and entertainment television networks, a motion picture company, television production operations, a television stations group, and theme parks.  NBC Universal's news and entertainment network consisted of NBC Universal's owned and affiliated (third-party owned) television stations, as well as cable and satellite television networks.  It provided programming content to third-party owned television stations and unrelated cable and satellite distribution systems.

During the tax years at issue NBC Universal had no offices or other places of business in Oregon.  It neither owned nor rented any real or tangible personal property in the State.  It also did not own or operate any local broadcast television stations in Oregon.  Prior to 2011, National Broadcasting Company Holding, Inc. ("NBC Holding"), a former subsidiary of General Electric Company ("GE"), owned 80 percent of the stock of NBC Universal, Inc., a Delaware corporation with its principal office in New York, New York.  Vivendi, S.A. ("Vivendi") owned the remaining percentage of the voting stock of NBC Universal.  NBC Universal was the sole owner, directly or indirectly, of hundreds of corporations, limited liability companies ("LLCs"), and limited partnerships that comprised GE's NBC entertainment business.

In January 2011, through a series of transactions, GE sold 51 percent of its NBC entertainment business.  GE first formed NBCUniversal Enterprise, Inc. ("NBCU Enterprise"), a Delaware corporation with its principal office located in Stamford, Connecticut.  On January 28, 2011, NBC Holding and Comcast Corporation ("Comcast") formed NBCUniversal, LLC

("NBCU LLC"). As part of the transaction, NBC Universal was converted into a limited liability company named NBC Universal Media, LLC ("NBC Universal Media"), a wholly owned subsidiary of NBCU LLC. Comcast contributed to NBCU LLC its national cable networks, its regional sports and news networks, certain of its internet businesses and other related assets, in addition to a cash payment. As a result of the foregoing contributions, NBCU LLC was 51-percent owned and managed by Comcast. NBCU Enterprise owned the remaining 49 percent.

For the tax years at issue, 2006 to 2010 (case TC-MD 170278R) and 2011 to 2013 (case TC-MD 170037R), Plaintiffs filed a consolidated return in accordance with ORS 317.710(5)(a). Pursuant to ORS 314.665(4) and OAR 150-314.665(4)(2), Plaintiffs used the standard apportionment formula and sourced receipts from licensing, retransmission fee and advertising outside of Oregon in accordance with the statutory Cost of Performance (COP) method. At audit, the Department proposed several adjustments, which included the application of the special formula for interstate broadcasters on the basis that Plaintiffs were "interstate broadcasters" under ORS 314.680(3). Plaintiffs appealed the Notices of Deficiency. After the appeals conferences for the respective audit periods, the Conference Officer upheld the audit adjustments. The Department issued Notices of Assessment to NBCUniversal Enterprises, Inc. on November 4, 2016, and to NBC Universal, Inc. on May 25, 2017.

## II. ISSUES PRESENTED

The issues presented in both parties' motion for partial summary judgment are:

1. Whether Plaintiffs were "interstate broadcasters" as defined in ORS 314.680(3)[1] when they transmitted broadcast programming content to third parties, who subsequently delivered that

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2015 version. The law did not materially change during the tax years at issue in this case.

programming content to viewing audiences located in Oregon during the tax years at issue.[2]

2. Whether none of NBC Universal's receipts may be included in the numerator of the sales factor under ORS 314.684.

## III. ANALYSIS

A.      *Summary Judgment Standard*

In general, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* TCR 47 C; *Tektronix, Inc. v. Dept. of Rev.*, 354 Or 531, 533, 316 P3d 276 (2013). The parties agree to the essential facts but disagree about the interpretation of the statutes in issue.

B.      *Construction of the Interstate Broadcaster Statutes*

The court begins its consideration of the broadcaster statutes, utilizing the approach set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As the Supreme Court stated in *Kinzua Resources v. DEQ*, 366 Or 674, 680, 468 P3d 410 (2020), when interpreting statutes, "the paramount goal is to discern the intention of the legislature," by "giv[ing] primary weight to the text and context of the disputed statutory terms," because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (citing *Gaines*)(internal quotation marks omitted). The court will also consider legislative history for what it might aid the court in deciphering legislative intent.

1.      *Broadcaster statutes in general*

Taxing businesses doing business in more than one state is a challenge. States have to make the statutes simple enough that businesses can follow it, and robust enough to approximate

---

[2] A second possible issue, whether Plaintiffs had substantial nexus with Oregon, was only briefly addressed by the parties is not ready for a decision at this time.

the amount of income derived from that state.  A majority of states have adopted the Uniform Division of Income for Tax Purposes Act (UDIPTA), which was designed to apportion or allocate business income for multi-state businesses.  Between 1989 and 2013, the Oregon legislature changed the calculations for interstate broadcasters following the trend of many states to an "audience factor" for calculating state taxable revenue from programming and advertising. *Hellerstein, State Taxation*, 3rd, 10.05[1].  The broadcast statutes, ORS 314.680 to 314.690[3] prescribe a special sales factor for the apportionment of income of "interstate broadcasters" that is distinct from the sales factor under UDITPA (ORS 314.605 to 314.665).  *See also Comcast Corp. v. Dept. of Rev.*, 363 Or 537, 539-540, 423 P3d 706 (2018) (discussing creation of the broadcaster statutes in 1989).  To apportion sales to Oregon, the sales factor numerator for an interstate broadcaster includes "all gross receipts attributable to this state" as well as "gross receipts from broadcasting" multiplied by the ratio of its Oregon audience or subscribers over its total audience or subscribers.  ORS 314.684(3)-(4).

The term "broadcaster" was amended by the legislature in 1989 to refer to "national broadcaster networks."  Decl of Harbur, Ex D at 13 (reprinting testimony, Jim Gardner, House Committee on Revenue and School Finance Work Session on HB 2226 (May 11, 1989) (noting that before 1989 taxation of broadcasters was limited "to broadcasters located within the State of Oregon").  Defendant observes that Plaintiffs' parent corporation describes Plaintiffs' work as "the broadcast of network television through owned and affiliated television stations within the United States * * * The NBC television network is one of four major U.S. commercial broadcast television networks."  (Def's Cross-Mot at 2 (quoting NBC's 10-K for year ending Dec 31,

---

[3] The court's references to ORS 314.680 to ORS 314.690 are to 1995.  The relevant statutes did not change during the tax years at issue.  These laws were repealed by Laws 2021, c. 74m § 4, eff. September 25, 2021.

2008).) However, even though Plaintiffs' parent corporation may define itself as an interstate broadcaster for purposes of investors, it does not mean that they meet the statutory definition of an "interstate broadcaster" under Oregon law. ORS 314.680(1) defines broadcasting as: "the activity of transmitting any one-way electronic signal by radio waves, microwaves, wires, coaxial cables, wave guides *or other conduits of communications*."[4] "Interstate broadcaster" "means a taxpayer that engages in the for-profit business of broadcasting to persons located both within and without this state and that for the tax year is of a class or type of taxpayer that would properly be subject to apportionment under ORS 314.680 to 314.690 as in effect prior to June 6, 2014." ORS 314.680(5).

Plaintiffs argue that they are not interstate broadcasters because ORS 314.680(3) requires "broadcasting to subscribers." (Ptfs' Memo at 5 (emphasis in original).) They argue that they distribute content to independent third parties – cable, satellite, and independently owned television stations located in Oregon – and not directly to persons in Oregon and thus they do not broadcast to Oregonians because there is a third-party break in the distribution chain. Plaintiffs focus on a lack of "privity of contract" with the end user/consumer. (*Id.*)

Although plaintiff denies it is an interstate broadcaster as defined by ORS 314.680, it admits it engages in production and distribution of electronic signals in three areas: cable

---

[4] It is unclear whether "other conduits of communications" includes third-party providers or affiliates, The Multistate Tax Commission (MTC) model rule adopted in 1996 provides the following definition of interstate broadcaster:

> "When a person in the business of broadcasting film or radio programming, whether through the public airwaves, by cable, direct or indirect satellite transmission or any other means of communication, either through a network (including owned and affiliated stations) *or through an affiliated, unaffiliated or independent television or radio broadcasting station*, has income from sources both within and without this state * * *."

https://www.mtc.gov/uploadedFiles/Multistate_Tax_Commission/Uniformity/Uniformity_Projects/A_-_Z/SpecialRules-TVRadio.pdf (emphasis added).

networks, broadcast television, and filmed entertainment. (Decl of Annie Huang, Ex 2 at 3.) Plaintiff admits its sports and news networks, "serve a combined 39 million subscribers across the United States, including key markets such as * * * Portland." (*Id.* at 4).

The plain language of ORS 314.680 does not support Plaintiffs' interpretation. The broadcaster statutes only required that a taxpayer be "engaged" in the business of broadcasting, it does not require a contractual relationship or privity with the end user. As Defendant points out, under Plaintiffs' interpretation, "no over the air broadcaster could ever be considered an *interstate* broadcaster." (Def's Cross-Mot at 6.) The exchange of local commercial airtime for network programming is the foundation of the network-affiliate relationship. It is for this reason that the legislature adopted the taxing scheme that it did. The adoption of the audience ratio acknowledges that the value in broadcasting lies in advertising, not in sale of content to end users. *See Comcast Corporation and Subsidiaries v. Department of Revenue*, 2020 WL 6948453 (Or Tax, 2020) (noting that ORS 314.680 was amended to ensure that a broadcaster outside Oregon would "be required to include an amount in its sales factor reflecting *the value of the Oregon audience to advertisers * * *.*") Cable subscribers who pay for programming are a relatively new phenomenon and cable provider's tax burden is materially the same under UDITPA or under the broadcaster apportionment regime, by contrast "over the air" broadcasting activity result in no sales under UDITPA but significant sales using the broadcaster apportionment formula. *Id.* at *11, n 22; *see also* Decl of Harbur, Ex D at 24 (reprinting testimony, Jim Gardner, House Committee on Revenue and School Finance Work Session on HB 2226 (May 15, 1989). The result Plaintiffs' propose cannot be reconciled with the statutory scheme created by the legislature. The term "broadcasting to persons" relates to "customers", whose statutory defined list includes "advertiser, a licensee or any other person that has a direct

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TC-MD 170037R (Control)                                                                    7

contractual relationship with an interstate broadcaster under which revenue is derived by the interstate broadcaster." ORS 314.680(3). Plaintiffs regularly transmit one-way electronic signals by a variety of conduits to licensees or other persons with direct contractual relationships and obtain income from advertising, licensing from their programming in the regular course of its trade or business.

To accept Plaintiffs' interpretation, the court would have to add words to the statute which are not there. "In the construction of a statute, [ ] a judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted or to omit what has been inserted." ORS 174.010. The plain meaning of the statute on its face appears to fit Plaintiffs' circumstances. Considering only the statutory scheme as written, Plaintiffs are interstate broadcasters with an Oregon audience.

2.     *Legislative history*

To the extent it is helpful in understanding the statutory broadcaster statutes, Defendant presented legislative history in support of its position. The legislative history shows that NBC was used as an example during the hearings which led to the broadcaster statutes at issue. Jim Gardner from the Oregon Association of Broadcasters stated:

> "Okay, let's assume NBC has a taxable nexus in the State of Oregon * * * What you would do is that you would determine for that taxable years NBC's total income, and then you would apportion a fraction of it to Oregon and you would use * * * their audience in Oregon as a fraction of their audience nationally. And the difference between the way it's currently done is that use of the audience. Right now, Oregon would use the cost of performance as the sole basis for apportioning sales. And the cost of performance is typically going to be, almost entirely in New York, LA somewhere like that. So this, gives from the national broadcaster perspective, it gives Oregon what I think is widely viewed as a fairer way of apportioning sales."

(Def's Cross-Mot at 7-8, (quoting testimony, Jim Gardner, House Committee on Revenue and School Finance Public Hearing on HB 2226 (June 12, 1989); *see also* Decl of Harbur, Ex D at

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TC-MD 170037R (Control)                                                                                     8

42.) The legislature was aware that multistate companies like Plaintiffs were using affiliates to transmit their programming to its citizens and considered them interstate broadcasters.

C.    *The Numerator of Plaintiffs' Sales Factor is Determined Under ORS 314.684*

Plaintiffs argue that even if they are considered an interstate broadcaster under ORS 314.680, "none of its receipts may be included in the numerator of the sales factor under ORS 314.684 because all of NBC Universal's activities in connection with the licensing of its programming content to the cable and satellite distribution systems and the independently owned television stations occurred outside of Oregon." (Ptfs' Memo at 8.)

Plaintiffs' argument has already been foreclosed by the Oregon Supreme Court in *Comcast Corp v. Dept. of Rev.*, 363 Or 537, 423 P3d 706 (2018). In *Comcast*, the court addressed the question of whether the state's special audience-based sales factor for interstate broadcasters applied to all a broadcaster's receipts (other than those specifically excluded). There the court found "the legislature did not intend to limit the term to receipts from the taxpayer's 'transactions and activities' that consist of 'transmitting any one-way electronic signal' if the taxpayer engages in other activities in the regular course of its trade or business." The court concluded that in calculating the "sales factor" all of a broadcaster's gross receipts "from transactions and activities in the regard course of its trade or business" and not only receipts from broadcasting are properly included in the numerator of the sales factor. Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS ORDERED Plaintiffs' Motion for Summary Judgment is denied. Defendant's

Cross-Motion for Summary Judgment is granted. The parties are instructed to file a status report

within 30 days proposing next steps.

_____

*This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved. See TCR-MD 19.*

*This document was signed by Magistrate Davis and entered on August 17, 2022.*

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TC-MD 170037R (Control)                                                                 10