Submitted on remand from the Oregon Supreme Court December 14, 2020, affirmed December 7, 2022, petition for review denied May 18, 2023 (371 Or 106)

KINZUA RESOURCES, LLC,
an Oregon limited liability company;
Frontier Resources, LLC,
an Oregon limited liability company;
ATR Services, Inc., an Oregon corporation;
and Gregory M. Demers, an individual,
*Petitioners,*

*v.*

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY,
an agency of the State of Oregon and
Oregon Environmental Quality Commission,
an agency of the State of Oregon,
*Respondents.*

Environmental Quality Commission
LQSWER11108; A161527

523 P3d 120

In this administrative review on remand from the Oregon Supreme Court, petitioners contend that the Environmental Quality Commission's order was not supported by substantial evidence. According to petitioners, under the construction of the relevant statutes announced by the Supreme Court, there was no evidence that two corporate entities had legal control over petitioner Kinzua as to impose direct liability on the company's members for failure to comply with those statutes. *Held*: The commission found that petitioner Kinzua was a limited liability company managed by its two members. Under the relevant LLC statutes, each member had equal rights in the management and conduct of petitioner Kinzua. Under the Supreme Court's construction of the solid waste management statutes at issue in this review, those facts were sufficient to impose direct liability for petitioner Kinzua's failure to properly close a landfill or secure required financial assurances. Thus, the commission's order was supported by substantial evidence.

Affirmed.

On remand from the Oregon Supreme Court, *Kinzua Resources, LLC v. Oregon Department of Environmental Quality*, 366 Or 674, 468 P3d 410 (2020).

Julie A. Weis argued the cause for petitioners. Also on the opening brief were Michael E. Haglund and Sara Ghafouri. On the reply brief were Julie A. Weis and Michael E. Haglund.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeHoog, Judge pro tempore.

PAGÁN, J.

Affirmed.

DeHoog, J. pro tempore, dissenting and concurring.

## PAGÁN, J.

This matter comes to us on remand from the Supreme Court, *Kinzua Resources v. DEQ*, 366 Or 674, 468 P3d 410 (2020) (*Kinzua III*), to address an argument by petitioners Demers, ATR Services, Inc., and Frontier Resources, LLC, that was not addressed in our previous opinion, *Kinzua Resources v. DEQ*, 295 Or App 395, 434 P3d 461 (2018) (*Kinzua I*), *adh'd to on recons*, 296 Or App 487, 437 P3d 331 (2019) (*Kinzua II*). After applying *Kinzua III's* framework and interpretation of ORS 459.205 and ORS 459.268, we conclude that the commission's decision to impose fines against petitioners was supported by substantial evidence, and we therefore affirm.

As this matter has been presented to Oregon's appellate courts multiple times, a recitation of the full procedural and factual background of this Environmental Quality Commission (the commission) proceeding would be redundant. Relevant to this particular remand are the following undisputed facts: Kinzua Resources, LLC, owned the Pilot Rock Landfill site. In 2006, Kinzua obtained a required permit for the site from the Department of Environmental Quality (DEQ) to operate the site as a disposal site for an adjacent sawmill. That permit required Kinzua to obtain financial assurance, particularly for the costs of closing the site and maintenance of the site after closure. Kinzua failed to acquire the financial assurance, resulting in a Notice of Civil Penalty by DEQ in 2010.[1] The resulting final order of penalty included a fine of $25,075, as well as an order that Kinzua secure financial assurance in accord with the relevant regulations. Kinzua never complied with the order regarding financial assurance.

In 2013, DEQ found that Kinzua had still not complied with its responsibilities, this time regarding how it closed the site and the post-closure maintenance. As a result, DEQ issued the amended notice of civil penalty at issue in this remand. In response, petitioner Demers, an individual, communicated with DEQ on behalf of Kinzua. Most notable for this remand, Kinzua was, at all relevant times, managed

---

[1] Kinzua did not challenge the penalty and it is not at issue in this opinion.

by two entities: ATR and Frontier. ATR and Frontier were the only members of Kinzua, a limited liability company (LLC). In its Restated Articles of Organization, Kinzua elected to be managed by its members. Under ORS 63.130(1), each member therefore had equal voting rights and power in the LLC. Demers, an individual, was a member of Frontier and also a shareholder and the president of ATR. Thus, at the time that DEQ was communicating with Kinzua about its conduct, Kinzua, as an LLC, had arranged to be "controlled" by the two voting members that were also separate legal entities, ATR and Frontier, while having Demers represent to DEQ and other entities that he spoke on Kinzua's behalf and was an agent of Kinzua or Frontier and ATR.

After an administrative hearing on the proposed penalty and order to comply, this matter proceeded to a contested hearing before the commission. The commission found that Kinzua: (1) violated ORS 459.268 when it failed to close the landfill; (2) violated OAR 340-095-0090 when it failed to obtain sufficient financial assurance; and (3) violated OAR 340-095-0050(1) when it failed to apply for a "closure permit." The commission assessed a penalty of $782,862 against Kinzua, most of which represented the economic gain Kinzua obtained by avoiding the costs of properly closing the site.[2]

However, DEQ assigned liability beyond Kinzua itself to include ATR, Frontier, and Demers under ORS 459.268 and ORS 459.205. ORS 459.268 states:

> "When solid waste is no longer received at a land disposal site, the person who holds or last held the permit issued under ORS 459.205 or, if the person who holds or last held the permit fails to comply with this section, *the person owning or controlling the property on which the disposal site is located*, shall close and maintain the site according to the requirements of this chapter, any applicable rule adopted by the Environmental Quality Commission under ORS 459.045 and any requirement imposed by the Department of Environmental Quality as a condition to renewing or issuing a disposal site permit."

(Emphasis added.) ORS 459.205 states:

---

[2] Petitioners have not assigned error to the findings against Kinzua.

"(1)   Except as provided by ORS 459.215, a disposal site shall not be established, operated, maintained or substantially altered, expanded or improved, and a change shall not be made in the method or type of disposal at a disposal site, until the person *owning or controlling* the disposal site obtains a permit therefor from the Department of Environmental Quality as provided in ORS 459.235.

"(2)   The person who holds or last held the permit issued under subsection (1) of this section, or, if that person fails to comply, then the person *owning or controlling* a land disposal site that is closed and no longer receiving solid waste must continue or renew the permit required under subsection (1) of this section after the site is closed for the duration of the period in which the department continues to actively supervise the site, even though solid waste is no longer received at the site."

(Emphases added.)

In arguing against the civil penalties, petitioners contended that the commission could not hold *anyone* other than Kinzua liable for any violations related to closing the site under ORS 459.268 or ORS 459.205 without a finding that the person or entity managed the day-to-day operations of the site. That argument rested on a narrow reading of the word "controlling" to mean more than having legal authority over the site. The commission disagreed, interpreting ORS 459.268 and ORS 459.205 to support finding that those who control the site, legally, as well as practically, can be held liable. As laid out by the Supreme Court:

"[T]he commission concluded that Frontier, ATR, and Demers were responsible for the same violations [as Kinzua] as persons 'controlling' the landfill, and it assessed a civil penalty against them 'in the same amount and manner as Kinzua Resources LLC.' The commission reasoned that 'controlling' includes having authority to control and found that all three petitioners met that test. With respect to Demers, the commission found that he 'had actual control of matters relating to the landfill site and that he exercised that control.' With respect to ATR and Frontier, the commission found that they had the authority, as the members of Kinzua, 'to control the property of the company, including the landfill.'"

*Kinzua III*, 366 Or at 678. The commission stated, regarding ATR and Frontier:

"It is also undisputed that Kinzua is a limited liability company whose members are ATR Services and Frontier Resources. Further, it is undisputed that Kinzua is [a] member managed limited liability company and that ATR Services and Frontier Resources have the legal authority to manage and conduct the limited liabilities business, and thus to control the properties owned by Kinzua. ORS 63.130."

Notable are the commission's findings that Demers provided contradictory testimony about his role with Kinzua, for example, stating in one instance that he was its president and secretary, and in the next saying he had no role whatsoever with the company. The commission concluded that Demers had operational control of the site, and that he was "delegated to go deal" with DEQ when the notices were first issued.

Rejecting petitioners' arguments about the application of the statutes, the commission concluded:

"That DEQ did not present any evidence that ATR Services and Frontier Resources actually exercised their legal control over the operations of the landfill, is not determinative of whether they had control over the landfill. ATR Services and Frontier Resource[s] had control *** over the operations of the landfill as a matter of law, irrespective of whether they exercised that control. Moreover, this appears to be the very type of situation that the statutes were intended to address in order to assure that those entities with authority to exercise control do so when a permittee has failed to comply with the requirements of the permit and underlying statutes and rules. As members of Kinzua Resources, LLC, with control over the landfill[,] ATR Service[s] and Frontier Resources took advantage of the opportunity to benefit from the operation of the landfill[.]

"The legal situation with respect to Mr. Demers is different. Mr. Demers was not a member of the Kinzua limited liability company and thus did not have legal authority on that basis to control the landfill. *** [T]here is clear and convincing evidence in the record that Mr. Demers had been authorized on behalf of Kinzua by the members of the company and that he actually exercised that authority."

Petitioners appealed, and their various assignments of error to the two appellate courts are relevant to the particulars of this remand.

Before us, petitioners raised two assignments of error: first, that the commission erred by construing the term "control" in ORS 459.205 and ORS 459.268 to include Demers; and second, that the commission erred by construing "control" as previously noted to include Frontier and ATR "simply because they had authority to control the landfill by virtue of being LLC members even though they never exercised such control." We were persuaded by the petitioners' arguments regarding control, stating: "the best reading of [the two statutes] is that the term 'controlling' is directed at those persons actively involved in the operation or management of a landfill site; in other words, those who, after a permit holder fails to comply with its obligations under a landfill permit regarding a particular site, step in and exercise restraining or directing influence over that site." *Kinzua I*, 295 Or App at 408-09. We adhered to our decision on reconsideration, but clarified that Demers's argument was limited to whether his conduct would be considered "controlling" if it was not shown that he exercised day-to-day operational control of the site. *Kinzua II*, 296 Or App at 488-89.

DEQ sought review of our decision, presenting only one argument to the Supreme Court on review: The term "controlling" in ORS 459.205 and ORS 459.268 should be interpreted to mean "having authority over the property on which a land disposal site is located, regardless of whether that authority is actually exercised." In opposition, petitioners argued that DEQ's proposed reading of the statutes would conflict with ORS 63.165(1), which provides members of limited liability companies with protection from liability for the obligations of the company. Further, petitioners argued that we had correctly interpreted the term "controlling" in the statutes. In reply, DEQ argued that Demers was, in fact, legally in control of all the entities involved in the litigation in one way or another, but, "[u]ltimately, where the decision-making authority lies in this web of interrelated entities is a factual determination for the Court of Appeals to make on remand."

The Supreme Court reversed, concluding that our reading of the word "controlling" was too narrow, particularly in the context of the phrase "owning or controlling." *Kinzua III*, 366 Or at 683. "Here, giving the term 'owning' its ordinary meaning, the statutory obligation arises from a person's status—possessing legal authority over the land on which the landfill is located—without regard for whether the person has actively participated in the operation of the landfill." *Id.* After analyzing the text, context, and legislative history of the statutes, the Supreme Court concluded that the legislature intended to hold those with *legal authority* over a site liable for the statutory obligations related to the site, regardless of whether or not DEQ could provide evidence that the person or entity actually exercised that authority. *Id*. at 685. The court reasoned that the legislature intended, as is the case here, to hold liable entities that *could* direct a site to comply with regulatory and statutory requirements but fail to do so. *Id.* ("That purpose of assuring public protection when the permit-holder fails to act is more compatible with the commission's conclusion that 'persons *** controlling' the disposal site reaches those having authority to take the actions required for proper closure. If those closure obligations fell only to persons owning or 'actively exercising' control over the landfill operations, it is more likely that critical post-closure maintenance would be left as a problem for the state to correct, as this case illustrates.").

Perhaps referring to DEQ's argument about this court making a factual determination on remand, the Supreme Court stated:

"Whether the liability that the commission imposed on petitioners is direct liability for petitioners' own omissions as persons 'controlling' the disposal site is intertwined with an alternative argument that petitioners raised in the Court of Appeals—that the record lacks substantial evidence to support the commission's findings, even under the commission's construction of 'controlling.' The Court of Appeals did not reach that argument, and neither party has meaningfully addressed petitioner's evidentiary challenge in light of the statutory framework that we have articulated in this opinion. Under the circumstances, we conclude that it is appropriate to remand this case to the

Court of Appeals to consider petitioners' remaining challenges to the order in light of the legal standard that we have identified."

*Id.* at 689 (footnote omitted).

We are thus left to consider whether any of petitioners' remaining arguments can escape the conclusion of the Supreme Court in *Kinzua III*.

Looking first at ATR and Frontier, the Supreme Court ordered that we consider the secondary argument that the commission's findings were not supported by substantial evidence in the record, given the conclusion that the commission correctly interpreted the statutes. A close reading of the record below and the briefing by petitioners demonstrates that petitioners' arguments regarding ATR and Frontier *required* us to disagree with the commission's conclusions. That is, at no point did petitioners argue to us that the record failed to demonstrate that ATR or Frontier lacked "legal authority" over the site; the arguments were premised on the view that, although the record demonstrated legal authority, that was insufficient to show "control" under the statutes. However, those arguments are foreclosed by the conclusion in *Kinzua III*.

To begin, the question presented by petitioners *assumed* that ATR and Frontier had legal authority to control the site but did not exercise that authority. In petitioners' opening brief, they framed the second assignment of error as:

"Did the Commission err by exceeding the scope of authority granted by the legislature when it construed the term 'control' in ORS 459.205 and 459.268 to include Frontier and ATR, the LLC members of the permittee/ owner of the landfill, *simply because they had authority to control the landfill by virtue of being LLC members even though they never exercised such control*?"

(Emphasis added.)

Further, regarding whether the commission's conclusion was supported by substantial evidence, petitioners necessarily relied on the argument that DEQ was required to demonstrate that "ATR or Frontier actively participated

in the operations of the landfill." Petitioners argued that "the ability to control Kinzua cannot be equated with control over the landfill." Because we are bound by *Kinzua III*, any argument that requires DEQ to demonstrate something more than legal authority would necessarily fail on the facts of this case.[3] Looking at *Kinzua III* and its focus on the context of the phrase "controlling," we cannot escape the importance of the word "owning." For the same reason that we would reject an argument that the statutes would not apply if there were multiple owners of a site, we reject the argument that if there are multiple entities or persons who have legal authority over a site, none can be held liable without a factual demonstration of something more than that legal authority.

Moreover, even if we do not treat the logical predicates of control implicit in petitioner's appellate arguments as concessions sufficient to meet the Supreme Court's formulation of the statutes announced in *Kinzua III*, there is ample reason in the record to conclude that the commission's order was based on substantial evidence. The commission explicitly determined that Kinzua had two members—Frontier and ATR. And as ORS 63.130(1) provides, absent some other arrangement provided in the articles of organization or operating agreement, each member "has equal rights in the management and conduct of the limited liability company's business." There is nothing in the record that indicates any other arrangement than the default of ORS 63.130(1). As we understand *Kinzua III*, the combination of those two— membership in an LLC and "rights in the management and conduct" of the business—is sufficient to conclude that legal control existed in Frontier and ATR to impose direct liability for each entity's omissions with respect to the permit and financial assurances. In other words, the commission's

---

[3] The dissent argues that "coequal" legal control is insufficient under *Kinzua III*'s analysis because one member cannot cause the organization to act without the consent of the other. 323 Or App at 55 (DeHoog, J., dissenting). However, that argument ignores that failing to act—that is, failing to provide consent to one's co-equal partner—has the same legal and practical effect as having exercised actual authority. If the LLC requires both members to agree on a course of action before it can be taken, refusing to consent necessarily paralyzes the organization, and authority has, in fact, been exercised. As discussed further below, this is precisely the type of legal authority the legislature sought to hold accountable under ORS 459.268 and ORS 459.205.

order was supported by substantial evidence of the required facts.

*Kinzua III* makes clear that the legislature intended that DEQ could hold *someone* liable for the failings of operating and closing a landfill without having to engage in a shell game with management and operational control. Indeed, as the Supreme Court noted, it is precisely situations like this that the legislature wanted to avoid: a business entity failing to act and claiming that no one could be held liable because "no one acted." Kinzua's owners were seemingly protected by a layer of corporate entities. After Kinzua failed to properly close the site or post financial assurances, it lapsed into administrative dissolution with the Secretary of State for "failure to pay certain filing fees or file required annual filings."[4] If petitioners' arguments were accepted, a once defunct entity that petitioners would like the world to believe is not controlled by *anyone* would be the only entity held liable for its failings. We are thus left with two entities that petitioners repeatedly acknowledged, and the record clearly demonstrated, had *legal authority* over the site but did not act. Under *Kinzua III*'s framework, those entities may be held liable.

Turning then to Demers, the Supreme Court noted, in a footnote, that Demers also made an argument that he could not be held liable because he was only an agent of ATR and Frontier. The Supreme Court declined to address the argument, as it was raised for the first instance in the reply brief to us. *Kinzua III*, 366 Or at 689 n 10. However, the Supreme Court also noted that, to the extent the argument was premised on there not being substantial evidence to support finding that ATR and Frontier "controlled" the site under ORS 459.205 and ORS 459.268, such an argument could be considered on remand. Because we conclude that there was substantial evidence to support the commission's finding regarding ATR and Frontier, we decline to discuss the agency argument Demers raised for the first time in the reply briefing.

Affirmed.

---

[4] Kinzua was later reinstated within the prescribed statutory time to allow it to resume business activities "as if the administrative dissolution never occurred."

**DeHOOG, Judge pro tempore,** dissenting and concurring.

In reversing our decision in this case, the Supreme Court directed us to undertake two tasks on remand: First, consider petitioners' argument that, even if petitioners ATR and Frontier theoretically could be held liable based upon their authority to control the landfill site, "the record is 'devoid of any evidence that [either entity], *acting alone*, had the authority to direct Kinzua's management or conduct'"; and second, "[t]o the extent [that] petitioners' argument [regarding petitioner Demers's liability] assumes that ATR and Frontier *** were not persons 'controlling' the landfill," consider that challenge as well. *Kinzua Resources v. DEQ*, 366 Or 674, 689 & n 10, 468 P3d 410 (2020) (*Kinzua III*) (stating that, if petitioners' argument made that assumption, their "challenge as to Demers [would be] within the scope of *** remand"). As to the first of those issues, the Supreme Court observed:

> "Some aspects of the order suggest that the commission treated the collective authority of the LLC members to control Kinzua as if each individual member had full authority to control Kinzua's property (the disposal site). *The commission has insisted, however, that its finding that ATR and Frontier were persons controlling the landfill site relied on more than just their status as apparently co-equal members of Kinzua.*"

*Id*. (emphasis added). In leaving that "final dispute" for us to address in the first instance on remand, the court further explained:

> "Whether the liability that the commission imposed on petitioners is direct liability for petitioners' own omissions as persons 'controlling' the disposal site is intertwined with an alternative argument *that petitioners raised* in the Court of Appeals—that the record lacks substantial evidence to support the commission's findings, even under the commission's construction of 'controlling.'"

*Id*. (emphasis added).

As I understand the majority opinion's approach to the first issue, it appears to largely reason that—notwithstanding the Supreme Court's express directive that we

address petitioners' argument that the commission errone-
ously treated the collective authority of the LLC members as
full authority for purposes of the applicable statutes—that
matter is essentially unpreserved on appeal. *See* 323 Or App
at 45 ("At no point did petitioners argue to us that the record
failed to demonstrate that ATR or Frontier lacked 'legal
authority' over the site."). As to petitioners' "intertwined"
substantial-evidence argument, the majority reasons that
any such argument is rooted in petitioners' failed position
that the commission could not hold any person liable who
had not actively participated in landfill operations. *See id.*
at 45-46. Thus, the majority seems to conclude, *Kinzua III*
largely forecloses the substantial-evidence argument that
that same opinion directed us to consider. *See id.* at 45-47;
*see also Kinzua III*, 366 Or at 689 (directing that inquiry
on remand). Finally, despite having reached the foregoing
conclusions, the majority briefly considers whether the com-
mission's final order is supported by substantial evidence
and concludes that it is. 323 Or App at 46-47.[1]

  In my view, the majority opinion inadequately
engages with the Supreme Court's explicit remand instruc-
tions in *Kinzua III*. Moreover, for the reasons that follow, I
would conclude that petitioners have the better argument
as to the first issue and that, ultimately, the commission's
final order is not supported by substantial evidence and rea-
son. As a result, I respectfully dissent with regard to those
matters.

DISCUSSION

  Given the Supreme Court's explicit instructions, I
understand our role on remand to require us to engage in
the following, stepwise assessment of petitioners' remaining
arguments: First, we must determine whether the commis-
sion properly concluded that Frontier and ATR each had the
sort of power that the Supreme Court recognized as having

---

[1] Based on its conclusion that substantial evidence supported the commis-
sion's final order, the majority summarily rejects petitioners' argument that,
insofar as the evidence was insufficient to find that ATR and Frontier controlled
the landfill, Demers likewise could not be held liable. 323 Or App at 47. Although
I disagree with the majority's rationale for rejecting that argument, I likewise
would reject it, as I explain below. I therefore concur as to the majority's disposi-
tion on that issue.

"control"—specifically, the legal authority to direct Kinzua's handling of the landfill site. Petitioners' argument that neither ATR nor Frontier can be deemed to have had *unilateral* legal authority to direct the LLC's operations underlies that part of the inquiry.

Second, if we conclude that the commission's rationale is theoretically sound, we must determine whether its resulting conclusion is supported by substantial evidence and reason. *Lockett v. Teacher Standards & Practices Comm.*, 289 Or App 593, 599, 412 P3d 229 (2017) ("We must set aside or remand an agency's order if it is not supported by substantial evidence in the record. ORS 183.482(8)(c). Implicit in the requirement that the order be supported by substantial evidence is a requirement that the agency's findings and conclusions be supported by 'substantial reason.'" (Internal quotation marks and brackets omitted.)).

Third, we must consider whether petitioners' argument as to Demers's liability "assumes that ATR and Frontier also were not persons 'controlling' the landfill." *Kinzua III*, 366 Or at 689 n 10. In other words, if the success of petitioners' argument that Demers cannot be held liable appears to depend upon our conclusion regarding the liability of ATR and Frontier, then we must consider whether that conclusion in fact leads to a different result for Demers. If, however, petitioners' argument as to Demers is not dependent upon that conclusion, then the issue is outside the scope of the Supreme Court's remand, and it would not be appropriate to consider it further. *See State v. Williams*, 276 Or App 688, 694-95, 368 P3d 459, *rev den*, 360 Or 423 (2016) (declining to consider issue on remand where Supreme Court had specifically instructed Court of Appeals to consider a different issue).

I turn to the assessment that I understand the Supreme Court's remand instructions to require, starting with whether the commission's final order properly found "control" within the meaning established in *Kinzua III*.

A. *Did Kinzua's individual members have control over the LLC's property?*

I would begin by considering whether, as the commission concluded, the status of ATR and Frontier as

member-managers of Kinzua necessarily gave each of them the requisite legal authority over both the LLC and its property, including the landfill.[2] As noted, 323 Or App at 42, the commission concluded that, because Kinzua was a member-managed LLC, and because ATR and Frontier were the only members of the LLC, those entities, by virtue of their membership in Kinzua, "had control *** over the operations of the landfill *as a matter of law*." (Emphasis added.) Petitioners argue in essence that the commission erred as a matter of law in drawing that conclusion, because here the LLC had only two members, each of which had equal voting power with the other. Citing ORS 63.130(1),[3] petitioners argue that neither Frontier nor ATR can be deemed to be in "control" of Kinzua or its property, including the landfill site. And, they contend, to the extent that there might be an evidentiary basis for finding that one or both entities had control of the landfill for reasons other than its status as a coequal member of the LLC, the commission erred by making that determination as a matter of law, rather than based on evidence in the record. I agree with petitioners on both points.

I acknowledge that, as a general matter, it was not unreasonable for the commission to conclude that, to the extent that ATR and Frontier controlled Kinzua within the meaning of *Kinzua III*, they also controlled Kinzua's property, including the landfill. In a different but analogous context, the Supreme Court has analogized the relationship that an LLC bears to its members to the relationship that a corporation has with its shareholders. *See Cortez v.*

---

[2] As we observed in our previous opinion *Kinzua Resources v. DEQ*, 295 Or App 395, 409 n 5, 434 P3d 461 (2018), *adh'd to on recons*, 296 Or App 487, 437 P3d 331 (2019), *rem'd*, 366 Or 674, 468 P3d 410 (2020) (*Kinzua I*), petitioners have not argued that, as business entities, ATR and Frontier are not "persons" within the meaning of ORS 459.205 and ORS 459.268.

[3] ORS 459.268.

ORS 63.130 provides, in part:

"(1) In a member-managed limited liability company, unless otherwise provided in the articles of organization or any operating agreement:

"(a) Each member has equal rights in the management and conduct of the limited liability company's business; and

"(b) Except as otherwise provided in subsection (3) of this section, any matter relating to the business of the limited liability company may be decided by a majority of the members."

*Nacco Materials Handling Group*, 356 Or 254, 263 n 12, 337 P3d 111 (2014). In *Cortez*, the court observed that an LLC member can be a "passive" owner of the LLC, "much like a corporate shareholder"; alternatively, the member might actively manage the LLC as either a member-manager or as the designated manager in a manager-managed LLC. *Id*. Here, although the member-managers of an LLC (like officers or directors of a corporation) presumably can delegate authority over particular aspects of the LLC's operations to others—including the LLC's employees—the commission implicitly found no evidence that legal authority over the landfill had been delegated to anyone else.[4] *Cf. id.* at 270-71 (where member-manager of LLC had delegated primary responsibility for workplace safety to LLC personnel, member-manager could not be held personally liable in absence of a showing that delegation itself had been negligent or that member-manager had negligently exercised any retained oversight authority). As a result, the commission's understanding that, *if* the entities controlled Kinzua, they also controlled the landfill within the meaning of ORS 459.205 and ORS 459.268, appears to be sound.

As noted, however, our remand instructions require us to consider petitioners' argument that the commission erred in concluding that ATR and Frontier controlled Kinzua—and therefore Kinzua's property—when, as coequal member-managers of the LLC, neither of them had unilateral control of the LLC. *See Kinzua III*, 366 Or at 689 (remanding for our consideration the intertwined questions of whether commission correctly imposed *direct* liability on entities as persons "controlling" the disposal site and whether substantial evidence supported commission's finding of control). Petitioners' contention is that the commission cannot have been imposing direct liability on ATR

---

[4] The commission specifically found that Kinzua's articles of organization provided for the LLC to be member managed, and that ATR and Frontier had offered no evidence at the hearing that Kinzua was not, in fact, managed by its members. From there the commission concluded that the entities also controlled the landfill. If the commission had found there to be any evidence that ATR and Frontier had delegated all legal authority over the landfill to someone else, it would likely have noted that fact.

or Frontier—as required to avoid the protection that ORS 63.165(1) gives LLC members and managers—"because, in petitioners' view, the record is 'devoid of any evidence that ATR or Frontier, acting alone, had the authority to direct Kinzua's management or conduct.'" *Id.* (noting petitioners' emphasis "that Kinzua was a two-member LLC" and that ORS 63.130(1)(b) "specifies that 'any matter related to the business of the limited liability company may be decided by a *majority* of the members'" (emphasis added)).

For its part, the commission has never challenged the premise of petitioners' argument or their understanding of ORS 63.130. That is, the commission does not appear to dispute that, for either ATR or Frontier to be accountable as a person "controlling" the landfill site, there must be evidence to support a finding of individual control, not merely collective control by coequal decisionmakers. And, given the presumptions of equal control and majority rule under ORS 63.130(1), there is no apparent basis for the commission to contend that ATR and Frontier were anything other than coequal voting members or that the authority that each had over Kinzua's operations and property could be exercised unilaterally, without the consent of the other.[5]

Instead, the commission has, over the course of this appeal, made two other arguments in support of holding ATR and Frontier liable. First, rather than defend the conclusion it had reached in the final order—that the entities controlled the landfill by virtue of their *legal authority* over Kinzua and its property—the commission's briefing suggested that the evidence in the record could support a finding that both ATR and Frontier in fact *exercised* authority over landfill-related matters, that is, actively controlled the landfill, as opposed to merely having had the power to do

---

[5] The majority opinion acknowledges each entity's coequal status in a two-member LLC, but somehow leverages that largely legal determination into a refutation of petitioners' argument that the record lacked substantial *evidence* that either ATR or Frontier had authority to act unilaterally with regard to Kinzua. 323 Or App at 46-47 (reasoning that *Kinzua III* effectively dictated that conclusion, despite the issue having been remanded for us to determine in the first instance). Respectfully, I do not view the majority's laudable policy arguments to be an adequate substitute for an analytically sound assessment of petitioners' substantial-evidence argument.

so if they so chose.[6] Second, as the Supreme Court noted, the commission contended (after it had issued its final order) that "its finding that ATR and Frontier were persons controlling the landfill site relied on more than just their status as apparently co-equal members of Kinzua." *Id*. I will address those arguments in reverse order, first exploring whether it is appropriate to consider a rationale other than the one expressly relied on in the final order—namely, that, as matter of law ATR's and Frontier's "'equal rights in the management and conduct of' Kinzua *** constitute[d] control over the site"—and, second, considering whether the fact that the commission arguably *could* have found that ATR and Frontier exercised *actual* control over the landfill site is a basis on which to uphold the order. Ultimately, my answer to both questions is "no."

As noted, the final order expressly cited ATR's and Frontier's membership in Kinzua as the basis for its conclusion that they had control over the landfill "as a matter of law." Nonetheless, the commission now contends that its finding that those entities controlled the landfill site relied on more than just their coequal-member status. I cannot agree. In the final order, the commission repeatedly states that ATR and Frontier can be held liable "based on their legal authority to control the property of the company, including the landfill." And contrary to the commission's post-order rationale, nothing in the final order suggests that the commission relied on anything other than the status of the two entities as LLC members with equal voting rights in concluding that they had the requisite legal authority to control Kinzua.

Rather, since ORS 63.130(1)(b) would prevent either entity from directing Kinzua's activities without the other's consent, the only reasonable understanding of the final

---

[6] To be fair, the commission at that time was responding to petitioners' argument that "active" control was required, so it is perhaps reasonable that it chose not to focus on the "legal authority" argument that ultimately prevailed in the Supreme Court. However, the commission did not seek reconsideration of that court's decision, which remanded for *us* to determine whether ATR and Frontier's status as coequal LLC members satisfied the newly articulated "legal control" standard, nor did the commission seek the opportunity to brief that issue to us on remand.

order's rationale is that, because ATR and Frontier *collectively* had authority over the landfill, they also had the requisite legal authority over the site for purposes of ORS 459.205 and ORS 459.268. The final order must stand or fall on the basis of *that* rationale; the commission may not rely on a rationale that it first advances on appeal. *See, e.g.*, *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996) (agency's order must articulate "the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts").

And, ultimately, that rationale for concluding that ATR and Frontier "control[led]" the landfill site fails. As noted, the commission does not dispute that, for it to impose direct liability against either entity, it must establish individual—and not merely collective—authority over the site. Thus, its stated rationale, premised on the entities' collective authority to control Kinzua and its property, fails to satisfy a critical prerequisite to liability under ORS 459.205 and ORS 459.268. The commission has simply never explained how, with each entity's authority being wholly conditioned on the other entity's approval, either member could *individually* be deemed to satisfy *Kinzua III*'s "legal control" requirement. Thus, unlike the majority, I would conclude that the commission erred in concluding that ATR and Frontier controlled the landfill site within the meaning of ORS 459.205 and ORS 459.268. I therefore respectfully dissent from the majority's conclusion upholding the commission's order on that basis.

B. *Does substantial evidence support liability as to ATR and Frontier?*

I next turn to whether we should uphold the commission's final order on the ground that ATR and Frontier collectively exercised *actual* control over the landfill site, such that they might be held liable even if they could not be held liable based on their legal authority alone. I recognize that, given the preceding discussion, there may be little point in considering that question. That is, since the commission's order relied on a flawed "collective authority" rationale in concluding that ATR and Frontier were persons controlling the landfill site, and since the order does not offer any other

rationale for that conclusion, it should follow that the order is not supported by substantial evidence. *See Lockett*, 289 Or App at 599 ("Implicit in the requirement that the order be supported by substantial evidence is a requirement that the agency's findings and conclusions be supported by 'substantial reason.'" (Additional internal quotation marks and brackets omitted.)); *see also Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014) (the substantial-reason requirement means that an agency must *articulate* the connection between the facts that it found and the conclusions it draws). Put another way, where an agency's order does not articulate the rationale that the agency seeks to rely on, it follows that the order lacks the requisite connection between the facts found and the conclusions reached based upon those facts.

Nonetheless, given the Supreme Court's mandate, I will briefly consider the evidence that the commission points to in support of its conclusion that ATR and Frontier controlled the landfill site. The commission argues in its brief on appeal:

> "Under the Articles of [Organization] for Kinzua *** ATR and Frontier manage Kinzua. As such, they had 'equal rights in the management and conduct' of Kinzua. ORS 63.130(1)(a). They could and did authorize sale of Kinzua's property, and authorized Demers to act on their behalf to bring Kinzua into compliance with its permit. Any action that Kinzua chose to take or not to take was directed by its managing members. *See* ORS 63.077 (powers of an LLC); ORS 63.130 (rights of member of an LLC). In the absence of contrary evidence, *it must be assumed that* Kinzua acted in accordance with the direction of its members when it applied for and obtained the permit from DEQ, filed its closure plan, chose not to provide financial assurance, chose to accept a final load of waste from the sawmill, chose not to contest DEQ's 2010 enforcement order, and chose not to properly close and maintain the landfill after it stopped accepting waste. ATR and Frontier *were exercising* restraining or directing influence and had power over all of the activities and omissions of the member-managed LLC, Kinzua."

(Emphases added.)

There are three problems with the commission's argument. The first problem is that many of the facts the commission now seeks to rely on were never found by the commission in its order. For example, the commission did *not* find that ATR and Frontier authorized the sale of Kinzua's property. And although the commission did find that Frontier and ATR decided to have Demers respond to DEQ's inquiries about fires at the landfill site, the commission did not find that the entities or their constituents "authorized Demers to act on their behalf to bring Kinzua into compliance with its permit." Finally, even if, as suggested, Kinzua might be "assumed" to have acted pursuant to the directives of its member-managers when it acted at all, the commission itself never explicitly drew that inference. Indeed, the language of the order suggests the opposite. The order states: "That DEQ *did not present any evidence* that ATR Services and Frontier Resources *actually exercised* their legal control over the operations of the landfill[ ] is not determinative of whether they *had* control." (Emphases added.) In other words, because the commission's theory was that it could impose liability based on the entities' legal authority or "power" to control the landfill site, it expressly considered it unnecessary to find that either entity had actually exercised that authority. As a result, it did not make many of the findings that it now purports to rely on.

A second problem with the commission's argument is that even the findings that the commission actually made in the final order—such as the nature of Kinzua's organizational structure or the entities' authority over Kinzua—simply reflect the flawed "collective authority" theory discussed above. That is, it may well be true that, working together, ATR and Frontier could "control" the landfill site. However, the question for purposes of this discussion is whether the commission found that they in fact exercised that control—it did not, and that "finding" therefore cannot support the commission's conclusion that ATR and Frontier were persons controlling the landfill under ORS 459.205 and ORS 459.268.

The final and perhaps most significant problem with the commission's "actual control" argument is that the

facts that the commission highlights almost all relate to its argument on appeal that "ATR and Frontier *were exercising* restraining or directing influence" (emphasis added), rather than the rationale underlying its order. Again, in its final order, the commission expressly disavowed any reliance on a theory that ATR and Frontier actually exercised any authority that they had over the landfill; instead the commission relied exclusively on the theory that the entities had the power to do so, which was all that had to be shown to qualify them as "controlling" under the applicable statutes. And while the Supreme Court may have upheld the commission's interpretation of ORS 459.205 and ORS 459.268 in that regard, the court did not suggest that we should uphold the order on a basis other than the one that the commission expressly relied on in the order itself. For each of those three reasons, I would conclude that the commission's determination that ATR and Frontier controlled Kinzua's landfill site within the meaning of those statutes is not supported by substantial evidence and reason. Accordingly, I respectfully dissent from that aspect of the majority opinion.

C.    *Does the commission's conclusion as to ATR and Frontier affect Demers?*

I turn finally to the last issue potentially within the scope of the Supreme Court's remand: whether the commission's order is valid as to Demers, an individual who is a member of Frontier and a shareholder and president of ATR, but who, unlike the other petitioners, is not a member of Kinzua. I say "potentially" within the remand because of the way in which the Supreme Court described the issue. As noted, the court's remand instructions stated, "[t]o the extent that petitioners' argument [as to Demers] assumes that ATR and Frontier also were not persons 'controlling' the landfill, the challenge as to Demers is within the scope of our remand to the Court of Appeals." *Kinzua III*, 366 Or at 689 n 10. I understand those instructions to mean that, if the commission erred in concluding that ATR and Frontier were liable, and if, as a result, the commission also erred in holding Demers liable, then we must address that error. If, however, the commission's conclusion that Demers was liable was not dependent upon or otherwise affected by any

erroneous conclusions regarding ATR and Frontier, then the issue of his liability is not within the scope of remand.

I will not belabor that issue. As we explained in our first opinion, the commission's findings as to Demers differed from those it made as to ATR and Frontier. *See Kinzua Resources v. DEQ*, 295 Or App 395, 399-400, 434 P3d 461 (2018), *adh'd to on recons*, 296 Or App 487, 437 P3d 331 (2019), *rem'd*, 366 Or 674, 468 P3d 410 (2020) (*Kinzua I*) (discussing "operational relationship" that Demers had with Kinzua and communications and efforts that Demers engaged in regarding the landfill). Based on actions that Demers had taken on behalf of Kinzua and related to the landfill,

> "the commission found that Demers *both had and exercised* control over the landfill site. Based upon those findings, the commission concluded that Demers personally was liable for the violations of ORS 459.205 and ORS 459.268."

*Id.* at 401 (emphasis added). In other words, the commission's conclusion that Demers was liable neither turned on its conclusion that ATR and Frontier were liable nor resorted to the reasoning that I would reject with regard to those entities. Moreover, unlike its conclusion that ATR and Frontier were liable because they had the legal authority to control Kinzua and its landfill, as to Demers the commission found that he had in fact exercised authority over the landfill site. *Id.*

As a result, were I writing for the majority, I would conclude that petitioners' argument as to Demers does not "assume[] that ATR and Frontier also were not persons 'controlling' the landfill," *Kinzua III* at 689 n 10. Stated differently, petitioners' argument that the commission erred in holding Demers liable is not based on their ultimately (in my view) correct position that the commission erred as to ATR and Frontier. Accordingly, petitioners' argument as to Demers is not within the scope of remand, and I, like the majority, would decline to address it further. *See Williams*, 276 Or App at 694-95. I therefore concur as to that part of the majority opinion.